COMMONWEALTH *vs.* THEA K. ROSTAD.

Hampshire. January 9, 1991. - July 10, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, Arrest, Container, Motor vehicle.

A written policy governing police inventory searches, directing officers to "search the arrestee and make an inventory of all items collected" did not extend to the opening of a closed container, a zippered handbag carried on the defendant's person, and art. 14 of the Massachusetts Declaration of Rights required the exclusion of drugs seized in the inventory search of the handbag. [621-623] NOLAN, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on August 8, 1989.

A pretrial motion to suppress evidence was heard by *John F. Moriarty*, J.

An application for an interlocutory appeal was allowed by *Wilkins*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*Nancy Gertner* for the defendant.

*Ariane D. Vuono*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant is under indictment for several drug offenses. She moved to suppress drugs, taken from her handbag by a police officer at the Belchertown police station without a warrant, and drugs and drug-related equipment subsequently taken from her automobile by a State trooper pursuant to a search warrant. After an evidentiary hearing, a judge of the Superior Court denied the motion to suppress. A single justice of this court allowed the defendant's application for interlocutory appeal. We now reverse the order denying the defendant's motion.

The motion judge recited his findings and legal reasoning substantially as follows. On July 21, 1989, a Belchertown police officer was on cruiser duty when he observed an automobile operated by the defendant traveling at a speed of fifty-eight miles per hour in a forty mile per hour zone and crossing to the wrong side of a double solid line in the roadway. He pursued and stopped the vehicle, and asked the defendant for her license and registration. As a result of a check by police radio, the officer learned that the defendant's license had been suspended. He then placed her under arrest. He arranged for a tow truck to tow the automobile to a garage, and he drove the defendant, who carried a handbag with her, to the police station.

According to the judge's findings, the Belchertown police had a written policy for the transportation and custody of arrested persons which stated in relevant part that "[t]he officer-in-charge or an officer designated by him shall search the arrestee and make an inventory of all items collected. The arrestee shall be asked to sign the inventory list." An officer unzipped and opened the defendant's handbag and inventoried its contents, which included bags and packets containing drugs. The officer reported the discovery to the State police and they obtained a warrant to search the defendant's automobile. In the automobile, they found drugs, documents, and a set of weights for a balance scale.

In *Commonwealth* v. *Bishop*, 402 Mass. 449 (1988), decided before the arrest and searches in this case, we affirmed the order of a Superior Court judge suppressing the contents of a zippered gym bag which had been located on the open bed of a truck that the police had impounded. We held that "art. 14 of the Declaration of Rights requires the exclusion of evidence seized during [an inventory] search not conducted pursuant to standard police procedures." *Id.* at 451, quoting *Commonwealth* v. *Ford*, 394 Mass. 421, 426 (1985). We also held that, because there was no standard State police policy specifically focused on "whether and under what circumstances closed containers should be opened and the contents inventoried," the gym bag contents were correctly

suppressed. *Id.* at 451-452. In addition, we announced that, after *Bishop* (*Bishop* was decided on June 6, 1988), inventory searches would not be considered valid except when conducted pursuant to standard police procedures that were written. *Id.* at 451.

The motion judge in the present case was well aware of our decision in *Bishop* and discussed it at some length. He concluded, however, that the "requirement of specificity" enunciated in *Bishop* with respect to written procedures applicable to a closed container on the bed of a truck was not intended by this court to apply to a wallet or handbag which are normally carried on the person and are primarily designed to hold valuables. The judge's reasoning, with much of which we agree, was as follows: "The legitimate aims of a custodial search include the safeguarding of the prisoner's property, protection of the police against charges of theft, and keeping out of the jail any thing dangerous to the prison administration. Such searches must, however, be carefully circumscribed by law because, as an exception to the ordinary constitutional requirements, they may be conducted without warrant or probable cause. Hence such a search must follow a standard or routine procedure adopted and recognized by the police force; it may not extend beyond the custodial necessities which are its sole justification; and it may not be allowed to become a cover or pretext for an investigative search. *Commonwealth* v. *Sullo*, [26 Mass. App. Ct. 766 (1989)]. Since the decision in *Commonwealth* v. *Bishop*, *supra*, such standard police procedures must be in writing and, at least in the case of automobile inventory searches, must specify whether and under what circumstances closed containers should be opened and their contents inventoried.

"In this case the Belchertown police did have a written policy mandating a search of all arrestees and the making of an inventory of all items collected. The policy did not specifically indicate the procedure to be followed in the case of closed containers carried by the arrestee upon his or her person. I cannot believe, however, that the requirement of speci-

ficity extends to such containers as wallets (see *Commonwealth* v. *Wilson*, 389 Mass. 115 [1983]), shoulder bags (see *Illinois* v. *Lafayette*, 462 U.S. 640 [1983]) or handbags carried by the arrestee. Such containers are the ones most likely to contain those types of property that most require being inventoried — such items, for example as cash, credit cards, keys and jewelry — because they are the type of property most susceptible to loss or theft. Authority to search such containers is therefore implicit in an injunction to search the person of an arrestee and inventory all items collected. There is a distinction for inventory purposes between a gym bag left in the bed of a pickup truck by its owner, and a handbag carried into the police station by a female arrestee.

"In this case, for example, if the police simply took the defendant's handbag from her without making an inventory of its contents, they ran the risk of being later accused of stealing some of those contents. If, on the other hand, they did not take her handbag from her when they locked her up, they ran the risk of permitting the introduction of contraband or even weapons into the jail or other place of detention. The written policy that had been adopted was designed to avoid that type of dilemma. This was not a case in which the police tried to use an inventory search as a pretext for an investigative search. They were attempting to comply with the dictates of the written policy of their department for the very reasons that the policy was adopted. To rule, as the defendant suggests, that the policy was defective because it failed to explicitly state the obvious would be to frustrate what had been a good faith (and I believe successful) effort to comply fully with constitutional requirements. I do not believe that such a ruling is mandated by constitutional principles (state or federal) or by the decided cases."

We agree with the judge's statement of the purposes of a custodial search and that such searches, as an exception to the ordinary constitutional requirements of probable cause and a warrant, must be carefully circumscribed by law with the result that they must follow standard police procedures. In addition, as we said in *Commonwealth* v. *Bishop*, *supra* at

451, those procedures must be written. Nothing we said in *Bishop* was intended to suggest that that requirement did not extend to searches of the person. The court's language was not so limited. As we recently said in *Commonwealth* v. *Garcia*, 409 Mass. 675, 684-685 (1991), citing *Bishop*, "[w]e have made it clear that, if police open a closed container during an inventory search in the absence of a specific written procedure requiring them to do so, then any evidence they discover in the container must be suppressed."

"The underlying rationale for allowing an inventory exception to the Fourth Amendment warrant rule is that police officers are not vested with discretion to determine the scope of an inventory search." *Colorado* v. *Bertine*, 479 U.S. 367, 376 (1987) (Blackmun, J., concurring), citing *South Dakota* v. *Opperman*, 428 U.S. 364, 382-383 (1976) (Powell, J., concurring). See *Commonwealth* v. *Ford*, 394 Mass. 421, 425 (1985). The underlying rationale for allowing an inventory exception to art. 14 of the Massachusetts Declaration of Rights is the same. In light of that rationale, we do not agree that the written policy of the Belchertown police, that "[t]he officer-in-charge or an officer designated by him shall search the arrestee and make an inventory of all items collected," was specific or "obvious" enough. More precisely, perhaps, we do not agree that the policy was explicit enough to guard against the possibility that police officers would exercise discretion with respect to whether to open closed wallets and handbags as part of their inventory search. It may be true, as the judge observed, that "[a]uthority to search such containers is . . . implicit in an injunction to search the person of an arrestee and inventory all items collected," but we think that an injunction in such general terms is not entirely clear and therefore unacceptably invites the exercise of police officer discretion. Nothing we said in *Commonwealth* v. *Garcia, supra*, relied on by the dissenting Justice, suggests a different result. There, we held that a written procedure requiring inventory of a motor vehicle is sufficient to direct the police to enter not only the vehicle's passenger compartment but also its trunk compartment. *Id.* at 684. However, we were careful

to say that "[o]ur conclusion that a procedure directing an officer to inventory the contents of a vehicle is sufficient to direct him to open the trunk does not extend to the opening of a closed container." *Id.* So too, a procedure directing an officer to "search the arrestee and make an inventory of all items collected" does not extend to the opening of a closed container.

We hold that art. 14 requires the exclusion of the drugs seized in the inventory search of the defendant's handbag. Also, we hold that the evidence seized from the defendant's automobile must be suppressed because it is the fruit of the unlawful search of the handbag. The Commonwealth has not argued that, even if the search of the handbag was unlawful, the search of the automobile was valid. We reverse the order denying the defendant's motion to suppress and remand this case to the Superior Court for further proceedings.

*So ordered.*


NOLAN, J. (dissenting). In *Commonwealth* v. *Garcia*, 409 Mass. 675 (1991), decided after *Commonwealth* v. *Bishop*, 402 Mass. 449 (1988), this court was faced with an inventory search of an automobile. In that case, the written policy governing such searches was silent with respect to the duty of the officer to open the trunk, directing only that police were to conduct "an inventory of the contents" of the vehicle. We held that, "[a]lthough [the written] procedures . . . do not specifically mention opening the trunk, they do impose on the police the responsibility for safeguarding the contents of the vehicle, and they direct that an inventory be taken of the contents of the vehicle. These procedures do not leave police with improper discretion as to whether to open the trunk." *Commonwealth* v. *Garcia*, *supra* at 684.

In so holding we recognized that a directive to inventory the contents of an automobile logically includes the contents of the automobile's trunk. The legitimate aims of an inventory search, "the protection of the vehicle and its contents;

the protection of the police . . . from false charges; and the protection of the public from the dangerous items which might be in the vehicle," necessitated opening the trunk of the vehicle. *Id.* at 682.

Similarly, I would hold that a written directive to inventory "all items" on a person taken into custody must include an inspection of those closed containers, such as wallets or handbags, which are most likely to contain valuable items, items most at risk of being stolen and which are the most likely objects of false theft claims against a police department. A more detailed written policy may be necessary for opening other types of closed containers, which are less likely to contain valuables, but a search which did not open a closed handbag in order to inventory the contents would not accomplish any of the legitimate goals which justify a warrantless intrusion.

Notwithstanding *Bishop*, I would hold that opening the handbag was reasonable, even in the absence of explicit written authorization to do so.[1] Therefore, the search of the handbag did not violate art. 14 of the Massachusetts Declaration of Rights. I dissent.

---

[1] Whether the same can be said of opening the various closed containers located in the handbag is an altogether different matter. The motion judge made the following findings of facts, most of which are ignored in the court's decision. "Officer Antonovitz unzipped and opened the defendant's handbag and inventoried its contents in her presence. When he began to do so another officer asked her if she had any illegal substances in it, and she replied 'Yeah pot'. . . . From the handbag, he removed an eyeglass case containing a baggy with brown vegetable matter in it; 5 paper packets of a type used for packaging narcotics for sale; a bag with a bag of white powder in it which proved to be cocaine; a small matchbox containing hashish; several items of paraphernalia associated with the use of cocaine; and $600.00 in cash." Because the court addresses only the broad issue whether the initial opening and search of the handbag were proper, I too confine myself to that issue.