## COMMONWEALTH *vs.* VINCENT PETERS.

No. 98-P-437.

Barnstable. March 19, 1999. - September 30, 1999.

Present: ARMSTRONG, DREBEN, & GREENBERG, JJ.

*Controlled Substances. Search and Seizure,* Inventory, Threshold police inquiry, Probable cause. *Threshold Police Inquiry. Constitutional Law,* Search and seizure, Probable cause. *Probable Cause. Arrest. Practice, Criminal,* Motion to suppress.

Where police officers had reasonable objective suspicion that the defendant had committed a crime, the officers' stop of the defendant's vehicle to conduct a threshold inquiry was lawful. [17-18]

Police officers, who lawfully arrested a defendant for operating a motor vehicle with a suspended driver's license, properly conducted a warrantless search of the defendant's person and seized controlled substances, cash, and a beeper, where the police had independent probable cause in the circumstances to arrest and search the defendant for possession of controlled substances. [21-22]

INDICTMENT found and returned in the Superior Court Department on May 23, 1995.

A motion to suppress was heard by *Gerald F. O'Neill, Jr.,* J., and the case was tried before *Herbert F. Travers, Jr.,* J.

*Jens Bahrawy* for the defendant.

*Linda A. Wagner,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. Originally arrested for a suspended driver's license after his car was stopped in the course of a drug investigation, the defendant was later charged and convicted of possession with the intent to distribute a Class B substance. The subsequent charge was based on items found in his automobile and on his person pursuant to "inventory" searches. The defendant's primary claim on this appeal relates to the warrantless search of his person. We affirm his conviction, although we uphold the search of his person on grounds other than an inventory search.

1. *Facts elicited at the hearing on the motion to suppress.* We state the facts as found by the motion judge after the hearing on the motion to suppress, supplemented by uncontested details necessary to our analysis. See *Commonwealth* v. *Sullo,* 26 Mass. App. Ct. 766, 767 n.1 (1989). On March 30, 1995, during police surveillance of a condominium complex known to them as a location for drug transactions, Trooper Scott McCabe saw the defendant enter a condominium unit with a female companion, remain for ten minutes and together with the woman leave the area in an automobile. When, shortly thereafter, the vehicle was seen in a mini-mall, McCabe drove there and saw the defendant enter a store. Another vehicle pulled up next to the defendant's car. A man got out and met the defendant in the doorway of the store. While the two men walked side by side with the woman McCabe had seen earlier with the defendant, McCabe saw the man reach into his pocket, take out some money and hand it to the defendant. The latter took the money and dropped something into the man's hand. McCabe, who had specialized training in narcotics investigation, believed that a drug transaction had occurred and radioed other officers to stop both vehicles.[1]

After receiving a transmission from McCabe, Trooper James Massari of the Massachusetts State police saw the defendant's vehicle[2] and pulled it over. The defendant and, subsequently, the female passenger were asked to step from the vehicle. The defendant was pat frisked. The passenger stated to another officer on the scene, Trooper Serpa, that she had a "joint" in her pocket. Serpa confiscated it and arrested her. Thereafter, Massari ran a "registry check" on the defendant's license and registration and was informed that the defendant had two licenses, one a suspended "A" number and the other a valid "S" number.[3] He arrested the defendant for operating on a suspended license and arranged for an inventory search of the vehicle, which included a canine inspection, before it was towed. A written inventory policy was introduced in evidence,

---

[1]No drugs were found in the vehicle driven by the other man.

[2]The judge in his memorandum stated that Massari "allege[d]" that he observed the vehicle traveling with a loud exhaust and that he saw furtive movements by the occupants. The judge noted that he took "no position on the loud muffler or the furtive movements in the vehicle other than to say that the defendant introduced no evidence at the suppression hearing and therefore, the evidence stands unchallenged."

[3]The record does not explain why the defendant had two licenses nor the difference between the two.

and Massari testified that its procedures were followed. Discovered in the glove compartment of the vehicle was $3,500 in cash to which a small business card was attached with a rubber band. Names and initials with amounts of money next to them were noted on the card. Massari, who had "training and experience" in narcotics investigations, recognized the card as a "tally sheet," that is, "a listing of names and numbers" showing what people have paid for narcotics.

The defendant and his passenger were taken to the Bourne barracks. After being photographed and fingerprinted, and prior to being placed in his cell, the defendant was searched pursuant to a written policy. An inventory search of "whatever was on [the defendant's] body was made." Six hundred seventy-two dollars in cash and a beeper were found in his left front pocket and two baggies believed to contain cocaine were found in one of his socks. The written inventory policy applicable to the search of the defendant's person was not introduced in evidence.

2. *The judge's conclusions.* The judge, in his memorandum denying the motion to suppress, concluded that McCabe, based on his observations, had specific, articulable facts to believe that the defendant had engaged in a drug transaction, see *Terry* v. *Ohio,* 392 U.S. 1, 21-22 (1968); that, once the defendant was stopped, the officers acted appropriately in arresting the defendant for operating on a suspended license; and that the inventory search of the automobile was conducted in accordance with the written policy introduced as an exhibit. As to the search of the defendant's person, the judge stated, "[T]he police testified that the search of the defendant at the station was conducted pursuant to a written policy. The policy was not introduced into evidence by either party. Therefore, there is no evidence before the court that the search at the station was unreasonable."

3. *Validity of the stop.* The defendant's argument that McCabe's suspicions were unreasonable on an objective standard is without merit. In reviewing a judge's denial of a motion to suppress, "we accept the motion judge's subsidiary findings of fact absent clear error, and we view, with particular respect, the conclusions of law that are based on them." *Commonwealth* v. *Kennedy,* 426 Mass. 703, 705 (1998). McCabe had seen the defendant enter a condominium complex known to police as a location for drug transactions, remain there for ten minutes, then drive a short distance away where he met a man who had pulled up to the defendant's car. The defendant then engaged in

what appeared to McCabe, a trained narcotics officer, to be a drug transaction. McCabe specifically saw the man give the defendant money and receive something in exchange. These observations by McCabe, communicated, and even if not, imputed[4] to Massari, reasonably led the officers to suspect that the defendant had committed a crime, and therefore warranted at least a threshold inquiry. The circumstances may even have constituted probable cause to arrest the defendant. See *id.* at 704.

4. *Inventory search of defendant's person.* Since the defendant's primary challenge both at the hearing on the motion to suppress and now on appeal is to the "inventory" search of his person, we set forth in detail in the margin the evidence as to the policy underlying that search.[5]

The defendant claims that without the written policy there is

[4]*Commonwealth* v. *Lanoue*, 356 Mass. 337, 340 (1969) (knowledge of one officer is knowledge of all).

[5]Massari was asked on direct examination by the Commonwealth:

Q.: "And that search, that was prior to his being placed in the cell; is that right?"

A.: "Yes."

Q.: "And is that the policy of the state police?"

A.: "Yes, everybody is searched prior to being placed in the cells."

On cross-examination by the defendant's counsel Massari was asked:

Q.: "So, he was searched, sir, at that point in time in a cell at the state police barracks while under arrest for operating after suspension, correct?"

A.: "Sure."

Q.: "And what were you looking for then, sir?"

A.: "Anything."

Q.: "Anything?"

A.: "Anything that he might use to hurt himself. If we had — we had to put him in the cell."

Q.: "So, at some point in time, he's told to take his socks off, right?"

A.: "Absolutely."

Q.: "Turn his socks inside out, right? And that was pursuant to your inventory; is that correct?"

A: "Yes."

no way to determine whether the procedures were complied with and, in any event, the testimony did not indicate, as required, an absence of discretion on the part of the police. *Commonwealth* v. *Rostad*, 410 Mass. 618, 622 (1991), makes

> Q.: "Sir, there is a written inventory policy for prisoners, is there not?"
>
> A.: "I believe there is."
>
> Q.: "Do you have that?"
>
> A.: "No, I didn't bring that."
>
> Q.: "But clearly the search that occurred at the station in the cell was an inventory search at that point in time according to what you say, right?"
>
> A.: "Yes."
>
> Q.: "Now, generally, Trooper, when you have someone under arrest for a motor vehicle offense, do you ask them to take off their clothes and search them?"
>
> A.: "Yes."
>
> Q.: "All prisoners, you ask to do that?"
>
> A.: "I do."
>
> Q.: "And that's what you did to Mr. Peters right?"
>
> A.: "Yeah."
>
> Q.: "Had him strip, and you searched all his clothing?"
>
> A.: "Yes."
>
> Q.: "Looking for personal property, right? To protect —"
>
> A.: "Anything, yeah."
>
> Q.: "And it was during this search when he was taking off his socks that you made this observation of these two bags of cocaine, correct?"
>
> A.: "Yes."

At the end of his cross-examination, defense counsel asked:

> Q.: "And once again, Trooper, you do have a written inventory policy and procedure for search of prisoners at the station; is that correct?"
>
> A.: "Yes."
>
> Q.: "And you don't have that here today; is that correct?"
>
> A.: "No."

clear that the requirement established by *Commonwealth* v. *Bishop*, 402 Mass. 449, 451 (1988), that standard police procedures for an inventory search be in writing, applies also to searches of the person. Quoting from *Colorado* v. *Bertine*, 479 U.S. 367, 376 (1987) (Blackmun, J., concurring), the *Rostad* court, at 622, stated that the underlying rationale for allowing an inventory exception to art. 14 of the Massachusetts Declaration of Rights was the same as under the Fourth Amendment, namely, "that police officers are not vested with discretion to determine the scope of an inventory search." Although in *Rostad* the Belchertown police had a written policy which allowed the officer in charge to "search the arrestee and make an inventory of all items collected," the court held that the policy was not

> "explicit enough to guard against the possibility that police officers would exercise discretion with respect to whether to open closed wallets and handbags as part of their inventory search. It may be true, as the judge observed, that '[a]uthority to search such containers is . . . implicit in an injunction to search the person of an arrestee and inventory all items collected,' but we think that an injunction in such general terms is not entirely clear and therefore unacceptably invites the exercise of police officer discretion."

*Ibid.* Thus, the court held that art. 14 required the exclusion of drugs seized in an inventory search of the defendant's handbag.

Here, the motion judge's basis for upholding the search — since the policy was not introduced, there was no evidence that the search was unreasonable — was based on an incorrect determination of the burden of proof. The Commonwealth has the burden of establishing that this was a lawful inventory search. *Commonwealth* v. *Sullo*, 26 Mass. App. Ct. at 772. See *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974) (where the search is without a warrant, the burden of establishing its reasonableness is on the Commonwealth).

It is doubtful that the Commonwealth has sustained its burden. While the defendant urges that *Bishop* and *Rostad* require the introduction of the written policy,[6] our difficulty is more basic. Even accepting the oral testimony, we consider the

---

[6]Obviously, the written policy would provide the best proof of its contents and the Commonwealth would be well advised to introduce such policies in evidence.

policy, as described, to be in such general terms that, like the policy in *Rostad, supra* at 622, it "unacceptably invites the exercise of police officer discretion." The scope of the search was "anything" and although at one point Massari limited it to "anything that he [the defendant] might use to hurt himself," he later again said "anything."

Moreover, the testimony also leaves doubt whether the policy meets the requirements set forth in *Commonwealth* v. *Sullo*, 26 Mass. App. Ct. at 768, for an inventory search to be legitimate. Those are: "First, the search must follow a standard or routine procedure adopted and recognized by the police force.[7] Second, it may not extend beyond the custodial necessities which are its sole justification. Third, it may not become a cover or pretext for an investigative search."

5. *Search incident to an arrest on ground other than suspension of license.* We need not, however, rely on the "inventory" search to uphold the search of the defendant's person. At the time of the defendant's arrest for a suspended license, the police had seen the defendant in a place known for drug activity, and had seen him in the presence of his female companion engage in what appeared to trained narcotics officers to be a drug transaction. In *Commonwealth* v. *Kennedy*, 426 Mass. at 708, not dissimilar circumstances supported a finding of probable cause to arrest. Here there was additional evidence — the female companion had acknowledged that she had drugs (a "joint") in her pocket, and the police had confiscated the drugs. In these circumstances, the police had probable cause to arrest and search the defendant for possession of drugs. See G. L. c. 276, § 1.[8] That this was not stated to be the ground of arrest is not dispositive. "[T]he citizens of the Commonwealth, whom the police are organized and exist to protect, and the Commonwealth should not be conclusively bound or limited by the officer's choice of words made subjectively in the active execution of his duties." *Commonwealth* v. *Lawton*, 348 Mass. 129, 132 (1964). *Commonwealth* v. *Perretti*, 20 Mass. App. Ct. 36, 40 (1985). See *Commonwealth* v. *Perez*, 357 Mass. 290, 300 (1970). The

[7]After *Bishop, supra,* and *Rostad, supra,* the procedure must be in writing.

[8]Subsequent to oral argument, the parties were asked to brief the question whether the search could be upheld as a search incident to an arrest for drugs. In his supplemental brief, the defendant argues that the strip search is precluded by *Commonwealth* v. *Thomas*, 429 Mass. 403, 408 (1999). Here there was, however, probable cause for such a search of the defendant.

ground given originally was not a sham, contrast *Mills* v. *Wainwright*, 415 F.2d 787 (5th Cir. 1969), and probable cause for an arrest for violation of the controlled substance laws, even if not existing at the time of the stop, derived from the evidence gleaned as the result of a valid *Terry* stop. See *Commonwealth* v. *Clermy*, 421 Mass. 325, 330 (1995). Contrast *Commonwealth* v. *Toole*, 389 Mass. 159, 163-164 (1983), in which probable cause to believe there was a gun in the cab of a truck was held not to justify a search in the absence of exigent circumstances or evidence that the gun was illegal.

In some cases, e.g., *United States* v. *Atkinson*, 450 F.2d 835, 838-839 (5th Cir. 1971), cert. denied, 406 U.S. 923 (1972), courts have suggested that the crime for which the arrest was made (here, suspension of license) and the crime for which there is also probable cause (here, illicit drug activity) should be related, so as to preclude improper ex post facto manipulation of the facts by the police. See *Commonwealth* v. *Perretti*, 20 Mass. App. Ct. at 40. If such a link is necessary, compare *Commonwealth* v. *Clermy*, 421 Mass. at 330, the connection between the basis for the stop and the evidence found on the defendant's companion when the stop was effected provides sufficient safeguards to validate the subsequent search as one for possession of controlled substances. See *United States* v. *Bizier*, 111 F.3d 214, 220 (1st Cir. 1997). See generally 3 LaFave, Search and Seizure § 5.1(e) (3d ed. 1996).

6. *Canine search of car.* The defendant claims that the canine search included as part of the inventory search of the car exceeded the officers' authority. As no drugs or other contraband were found by reason of the canine search, the defendant can claim no prejudice. Moreover, the existence of probable cause to arrest the defendant for possession of controlled substances, discussed in part 5, *supra*, would also have warranted the canine inspection as a search incident to that arrest.

7. *Remaining contentions.* The remaining contentions of the defendant are without merit. His claim that he should have been permitted to cross-examine two officers as to their financial interest in a possible forfeiture is disposed of by *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 760-761 (1984). In view of the expert testimony at trial, the defendant's claim that the business card (tally sheet) should not have been admitted is baseless.

*Judgment affirmed.*