COMMONWEALTH vs. DAVID J. SILVA.

No. 02-P-981.

Plymouth. October 3, 2003. - April 28, 2004.

Present: MASON, BROWN, & BERRY, JJ.

*Search and Seizure,* Automobile, Plain view, Impoundment of vehicle, Inventory. *Constitutional Law,* Search and seizure.

A District Court judge erred in denying a motion to suppress evidence of cocaine seized during a warrantless automobile search for registration and ownership documents potentially within the automobile, which was about to be towed, because the search did not qualify as a "plain view" search, in that the Commonwealth failed to establish the existence of a constitutionally adequate written policy providing an automatic justification for police entry of a vehicle to be towed in order to search for records [31-37]; therefore, this court reversed the convictions of possession of cocaine, possession of cocaine with intent to distribute, and a drug violation within a school zone, each of which may have been based in whole or in part on evidence derived from the unlawful search, and remanded the case for such further proceedings as the Commonwealth might elect to pursue [38-39]. BROWN, J., concurring.
This court declined to consider an issue that was raised for the first time on appeal. [37-38]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on September 21, 2001.

A pretrial motion to suppress evidence was heard by *Gregory R. Baler,* J., and the case was tried before *Robert E. Baylor,* J.

*Eric S. Brandt,* Committee for Public Counsel Services, for the defendant.

*Kelly-Anne DeFao,* Assistant District Attorney, for the Commonwealth.

BERRY, J. In this case, we reverse the denial of that part of a motion to suppress directed to a warrantless automobile search because both the legal theory advanced and the foundational evidence proffered by the government in support of the police

officer's entry into the car to search for ownership records —
which are the predicates advanced to support the subsequent
plain view seizure of cocaine — were constitutionally deficient.[1]
In particular, the government's legal theory and justification for
the entry into the automobile to conduct a search for documents
rested on an unproved police policy, most sketchily referenced
in the record, which purportedly would authorize the police to
enter a car and conduct a "search for information pertaining to
ownership" in all circumstances where a car is to be towed fol-
lowing a stop.

Notwithstanding a clear failure to meet the government's
burden of proof by either introduction of the best evidence of
the actual written police policy or other sufficient foundational
evidence, the government argues that this type of search —
even if not proved by an extant writing — is nevertheless
constitutionally sustainable because such a pre-towing
ownership-information-gathering search is "less restrictive than
an inventory search" and, hence, "still meets the more stringent
requirements of an inventory search." Reduced to essentials, the
government's legal theory is that, because such an automobile
search for registration and ownership information is less inva-
sive than a full inventory search of a car, this kind of what
might be labeled an "inventory light" search need not satisfy
the constitutional requirement set forth in *Commonwealth* v.
*Bishop*, 402 Mass. 449, 451 (1988), and its progeny that there
must be a written police policy governing the search and that
the government must meet its burden of proof of introducing
foundational evidence to prove the police policy.

We are not aware of any legal precedent, nor has the Com-
monwealth provided any, that would hold constitutionally sup-
portable such a police policy for automobile entries and searches
to gather ownership documents precedent to towing of a car,
where such a policy, even if less invasive than a full inventory
search, and even if calibrated as "lighter" (a most dubious
measure of constitutional weights), was not proven to be part of

---

[1] A warrantless search is presumptively unconstitutional, unless the govern-
ment meets the burden of proving that the search falls within a "narrow class
of permissible exceptions" to the warrant requirement. *Commonwealth* v.
*Antobenedetto*, 366 Mass. 51, 57 (1974).

a written police protocol. Therefore, because the entry to search for documents potentially within the car was not lawful, the plain view doctrine does not save the seizure of the drugs from constitutional infirmity. Accordingly, the motion to suppress should have been allowed.

1. *Factual background.* We summarize the findings of the motion judge, supplemented where necessary to provide context with undisputed facts adduced at the suppression hearing. While on routine patrol in the early morning hours, Officer Nazaire Paul, for reasons we need not address, ran a computer check on the license plate of a blue Pontiac Bonneville car, which the defendant, who was alone, was driving. The computer check revealed that the car was not registered or insured. The officer signaled and stopped the car.[2] The officer asked for license and registration; the defendant had neither. The defendant said his driver's license had been suspended. Although lacking any documentation of identity, the defendant stated his name and date of birth. From the computer registry check of the license plate, the officer had learned the name of the car's owner, which did not match the defendant's. By a further inquiry to the police station, the officer confirmed that the defendant's license was suspended. At this point, the defendant was arrested, handcuffed, and placed in the rear of the patrol car. The officer called for a tow truck and then returned to and entered the car. This, according to the officer, was in order to obtain owner registration information for the dispatched tow truck operator. While reaching for the glove compartment, the officer spotted a large number of clear plastic bags containing cocaine wedged between the passenger seat and seat back.

The defendant was transported to the police station. During booking procedures, the police searched the defendant and found a small additional quantity of cocaine, along with a straw and eighty-one dollars. Following the defendant's unsuccessful motion to suppress the fruits of the automobile and personal searches, in which he argued, inter alia, the lack of a specific written inventory search policy, he was tried and convicted by a District Court jury of possession of cocaine, possession of

[2]The stopping of the car is not challenged.

cocaine with the intent to distribute, and possession of cocaine with intent to distribute within a school zone.[3]

2. *The denial of suppression based on search for ownership documents and the plain view doctrine.* The District Court judge's denial of the motion to suppress rested on an analysis that this was a plain view seizure, following what the judge determined to be a valid entry into the car by the police officer to conduct a search for registration records and ownership information to provide a towing company in connection with transporting the to-be-impounded car.[4] This analysis is not supportable because the necessary prerequisites for invocation of the plain view doctrine were not established.

There is no dispute that, once the officer entered the car, the cocaine fell within the domain of his plain view, but "[p]lain view *alone* is never enough to justify the warrantless seizure of evidence," *Coolidge* v. *New Hampshire*, 403 U.S. 443, 468 (1971); rather, there are prerequisites that must be established before the plain view doctrine comes into play. First, the police must be "lawfully in a position from which they view an object [to be seized]," *Commonwealth* v. *Santana*, 420 Mass. 205, 211 (1995), quoting from *Minnesota* v. *Dickerson*, 508 U.S. 366, 375 (1993); second, the object within the monocle of plain view must manifest an "incriminating character [that] is immediately apparent," *ibid.* — that is, the object must be patently illegal, such as contraband, and not mere evidence for which extrinsic context is necessary to determine the object's criminal nature; and third, "Massachusetts cases also have required that the police officers come across the item inadvertently." *Com-*

---

[3]A conviction for driving with a suspended license was placed on file and is not before us in this appeal.

[4]The lawfulness of the impoundment itself has not been challenged below or on appeal by the defendant, and the issue should therefore be considered waived for the reasons stated in *Commonwealth* v. *Garcia*, 409 Mass. 675, 678-679 (1991). In any event, the record shows that the defendant had been arrested, there were no passengers in the vehicle, and the vehicle was stopped on a public street corner. Although there was no specific evidence whether this was an area of heavy traffic or possible theft or vandalism, or that the car's placement was endangering other vehicles, see *Commonwealth* v. *Daley*, 423 Mass. 747, 750 (1996), the facts that the car was unregistered, uninsured, and on a public way would still justify impoundment and towing. See *ibid.*

*monwealth* v. *Santana, supra.* See *Commonwealth* v. *D'Amour*, 428 Mass. 725, 730-731 (1999); *Commonwealth* v. *Balicki*, 436 Mass. 1, 8-9 (2002).

In this case, the second and third requirements, of obvious incriminating nature, inherent in the plainly viewed white substance (with the characteristics of cocaine) that was packaged in small bags stuffed between the car seat and back, and of inadvertence, are present. It is the initial element that is problematic, that is, whether the police officer was lawfully present within the car. "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused." *Coolidge* v. *New Hampshire*, 403 U.S at 466.

Stated more precisely in the circumstances of this case, the lawfulness of the officer's entry into the car to search for records depends on whether the Commonwealth proved that there is a constitutionally adequate written police policy providing the "prior justification for an intrusion." *Ibid.* See *Commonwealth* v. *Bishop*, 402 Mass. at 451. On this point, the judge's findings collapse into one inquiry what, in law, are two distinct inquiries, concerning (a) the propriety of the impoundment and any necessary towing of the car incident thereto and (b) the propriety of the search of the car. "Under both the Federal and Massachusetts Constitutions, analysis of the legitimacy of an inventory search of an impounded vehicle involves two related, but distinct, inquiries: (1) whether the impoundment of the vehicle leading to the search meets constitutional strictures, and (2) whether the conduct and scope of the search itself meet those strictures." *Commonwealth* v. *Ellerbe*, 430 Mass. 769, 772-773 (2000). Furthermore, the judge's findings erroneously presume the existence of a valid police policy — albeit none was introduced in evidence, or defined with any precision — which, in virtually all circumstances where towing is required to remove an impounded car, would automatically segue to, and provide justification for, a police entry to search for records

within the car.[5] If that were so, then impoundment of a car, without more, would inexorably lead to bypass of the constitutional requirements for the exception for warrantless automobile searches established by *Bishop, supra,* and its progeny. Put another way, impoundment of a car and an inventory search of a car are not synonymous, and the constitutional analysis is not unilateral. Rather, it is the difference between the two that gives rise to the two-step process of legal analysis described above.

Contrary to the Commonwealth's contentions in this case, the constitutional requirements of a written police policy to justify entry into the car after impoundment, and measurement of the scope of the ensuing search against such a policy, apply not only to a police search to gather physical objects and things from within the car, but also apply to a police search to gather documents, papers, or records from within a car. This is so even if, as the Commonwealth argues, such a record-based search is less expansive than a full inventory search. Simply put, the latter record retrieval search of the impounded car, whether designated "inventory light" or something else, is nonetheless a warrantless search.[6]

With these principles as backdrop, the standards for our appellate review of the determinations by the judge in acting on this motion to suppress are clear. This court is to undertake an "independent determination of the correctness of the judge's application of constitutional principles to the facts as found," *Commonwealth* v. *Mercado,* 422 Mass. 367, 369 (1996), and "[i]n reviewing a ruling on a motion to suppress, [the appellate court] accept[s] the judge's subsidiary findings of fact absent clear error." *Commonwealth* v. *Scott,* 440 Mass. 642, 646 (2004). In this case, we conclude that there is clear error in the

---

[5]The judge's findings state, "Since there were no other passengers in the car, the car had to be towed. Police policy is to determine who is the owner of the vehicle before the car is towed. To that end, Officer Paul opened the door on the driver[']s side and reached for the glove compartment."

[6]In this respect, the variation argued by the Commonwealth below, that this case is merely about a "lawfully impounded car . . . not an inventory-search," is untenable. This is not a case involving only impoundment of a car and its removal from a public way without any search being conducted inside the car. Here, there was more than an impoundment; there was a search. It cannot logically be argued that a search of the glove compartment was physically necessary to accomplish the impoundment and towing.

judge's finding that the government had met its burden of proof, in that the foundational evidence offered by the Commonwealth concerning the existence, form, and substance of the suggested police policy was ephemeral and failed to meet the constitutional measures set in long-established precedent. Not only was no written policy introduced by the Commonwealth, but also the police officer, in the only relevant snippet of testimony (set out at the margin), stated merely that he "believed" a written policy of some sort existed and could proffer only vagaries concerning what such a believed-to-exist written policy encompassed with respect to procedures for entering a car to provide registration information to a towing operator.[7]

In an oft-times shifting analysis, the Commonwealth, at points, argues that this purported towing-record-gathering search policy was not an inventory policy, but then, notwithstanding that disavowal, the bulk of the Commonwealth's brief focuses on the case law governing inventory policies. In essence, the Commonwealth suggests that, because the subject police search policy for gathering towing information was more limited than a comprehensive inventory policy, the "lesser" search policy would a fortiori be constitutional because "greater" inventory search policies have been determined to be constitutionally

---

[7]The testimony was as follows:

DEFENSE COUNSEL: "What requires you to [enter the vehicle to obtain registration information in] that glove box?"

OFFICER PAUL: "That's the procedure that we have."

COURT: "I'm sorry. That's what?"

OFFICER PAUL: "We['re] supposed to give all information of the owner of the vehicle to the tow driver."

DEFENSE COUNSEL: "That is your procedure?"

OFFICER PAUL: "Yes, that's correct."

DEFENSE COUNSEL: "And that procedure is in writing?"

OFFICER PAUL: "*I believe so.*"

DEFENSE COUNSEL: "*And do you have a copy of that procedure?*"

OFFICER PAUL: "*No, I don't. I don't.*"

(Emphases added).

sustainable. This analysis is fatally flawed because, even if analyzed under the novel "inventory light" theory advanced by the Commonwealth, entry and search of a car to obtain documents therein is still a warrantless search.

Thus, to the extent the Commonwealth seeks to justify this search as an exception to the warrant requirement in a manner analogous to inventory searches of an impounded car, the Commonwealth was required to meet the governing *Bishop* standards and to prove the existence of written police guidelines.[8] To state the overarching principles: A warrantless entry into and search of an automobile undertaken pursuant to a lawful inventory search procedure may provide an exception to the warrant requirement. However, such warrantless automobile searches are permissible under art. 14 of the Massachusetts Declaration of Rights only when conducted pursuant to written inventory guidelines, as to which the government has the burden of proof. See *Commonwealth* v. *Bishop*, 402 Mass. at 451; *Commonwealth* v. *Alvarado*, 420 Mass. 542, 553 (1995); *Commonwealth* v. *Peters*, 48 Mass. App. Ct. 15, 20-21 (1999). In considering whether the government has met that burden of proof, the written inventory policy is the best evidence, and the document memorializing the police policy should be offered in evidence and admitted as an exhibit. See *id.* at 20 n.6 ("[o]bviously, the written policy would provide the best proof of its contents and the Commonwealth would be well advised to introduce such policies in evidence").

---

[8]Contrary to the Commonwealth's argument, the search of the car is not justified under either *Commonwealth* v. *Navarro*, 2 Mass. App. Ct. 214, 221 (1974), or *Commonwealth* v. *Lantigua*, 38 Mass. App. Ct. 526, 528 (1995), both of which are distinguishable in fact and in law. Specifically, the analysis in *Navarro* rested on exigent circumstances arising during a rapidly unfolding police investigation of a break-in, where there was need to quickly determine whether a parked, unattended car was that identified in a police radio broadcast. The further discussion concerning police entry into a motor vehicle to obtain the vehicle identification number, as the *Navarro* case stated, 2 Mass. App. Ct. at 217-218, involved an issue that had not yet been addressed by the Supreme Judicial Court and is, accordingly, to be considered in light of the court's subsequent decision in *Bishop* — one of the points addressed herein. *Lantigua* is distinguishable as involving a *Terry*-type search of a car where there was reasonable suspicion to conclude that weapons were present, *Terry* v. *Ohio*, 392 U.S. 1 (1968), and followed the principles announced in *Commonwealth* v. *Silva*, 366 Mass. 402 (1974).

In these respects, this case presents a risk similar to that presaged in *Commonwealth* v. *Brinson*, 440 Mass. 609, 611 n.2 (2003): "The Commonwealth runs the risk that evidence concerning the written procedure will be excluded [or, as in this case, will be insufficient] on best evidence or hearsay grounds unless it produces the written procedure at the hearing or obtains a stipulation as to its contents beforehand."[9] The need for a writing in which the applicable police policy is memorialized locks in defined objective criteria and, thereby, ensures not only uniform application, but also protects against vague and undifferentiated verbal variations, which "unacceptably invite[] the exercise of police officer discretion," *Commonwealth* v. *Rostad*, 410 Mass. 618, 622 (1991), and which may "become a cover or pretext for an investigative search." *Commonwealth* v. *Sullo*, 26 Mass. App. Ct. 766, 768 (1989).

Moreover, these objective criteria and uniform written directives not only serve as a guide for the police officer on the street (see *Commonwealth* v. *Rostad, supra*; *Commonwealth* v. *Peters, supra*), but also have implications for judicial review. A written document provides the black-letter text and markings by which a reviewing court can resolve constitutional questions presented concerning the scope of automobile searches in this area, to the end that warrantless impoundment or inventory procedures — or, as here, towing-related procedures and searches for ownership information — do not substitute for the constitutional mandate of a warrant.

In this case, given the omissions in the Commonwealth's proof, there is no way for a court to scrutinize what the policy encompassed and the precision with which the procedures set forth therein were defined and, thus, no way to review such constitutionally important questions as: In what circumstances, to what extent and in what manner did the police policy encompass towing? If the written policy did encompass towing-related matters, what did the inventory policy say in clear and objective terms about entering a car to obtain registration for

---

[9]This is not to say that there may not be particular instances in which, even though the written inventory is not admitted in evidence, there is other evidence sufficiently clear and unequivocal to meet the government's burden. This is not such a case.

towing purposes? See generally *Commonwealth* v. *Bishop*, *supra*. See *Commonwealth* v. *Peters*, *supra* (suppression required where Commonwealth did not introduce sufficient evidence from which to conclude that inventory policy satisfied constitutional requirements or that police conduct in the particular case conformed to the policy in any event).[10,11]

Accordingly, the motion to suppress the cocaine found in the vehicle should have been allowed.

3. *The booking search at the police station.* The defendant, on appeal, argues that the motion judge also erred in failing to suppress the small quantity of cocaine and items seized during the booking-related search. However, while the defendant's motion to suppress contains a phrase referring to "other evidence seized from [the defendant's] person," the booking search was not addressed by the defendant at the suppression hearing, either during the examination of the witnesses or during colloquies with the motion judge, and there is no developed record relating to this search. A defendant may not, in effect, stand idly by and do nothing to preserve his rights, but rather must attend to

[10]In addition to our determination of the constitutional inadequacy in the government's proof, we further note that the very justification for the officer's entry into the car, to obtain owner-registration information for the tow, is substantially undermined because the officer knew from a registry computer check undertaken before the stop that the car was not registered. Hence, this was a poststop, postarrest entry into the car to search the glove compartment for a thing known not to exist — presenting an issue concerning the objective reasonableness of the officer's actions. The concurring opinion characterizes the entry as a pretext.

[11]On appeal, the Commonwealth most strongly presses the inventory-plain view approach to the warrantless search, but also suggests that the search may be justified, alternately, as a *Terry*-type search. As for the *Terry*-based alternative, we need say little. *Terry* principles are simply not relevant here; at the time of the search, the defendant had already been placed under arrest, handcuffed, and locked in the rear of a police cruiser. A *Terry*-type patfrisk may be made only in the context of a threshold investigative inquiry where there is reasonable suspicion that the detained person may be armed and dangerous. See *Commonwealth* v. *Lantigua*, 38 Mass. App. Ct. 526, 528 (1995) (*Terry* search of automobile must be premised on reasonable concern for safety). The scenario here does not fit that paradigm — by definition, threshold inquiry terminates with arrest, and a handcuffed suspect locked inside a patrol car poses little risk of attack. See *Commonwealth* v. *Pacheco*, 51 Mass. App. Ct. 736, 742 n.5 (2001) (basis for *Terry*-type search of automobile eroded when defendant secured in police cruiser).

procedural matters essential to placing the search and seizure issue before the court for review. *Commonwealth* v. *Garcia*, 409 Mass. 675, 678 (1991). This issue, raised for the first time on appeal, but not preserved below, is not properly presented in this appeal. See *Commonwealth* v. *LaFleur*, 58 Mass. App. Ct. 546, 551 n.5 (2003) (even where claim is contained in written motion to suppress, it cannot be considered on appeal where defendant fails to press the issue actively at the motion hearing or at trial).

4. *Conclusion.* The jury convicted the defendant of possession of cocaine, possession of cocaine with intent to distribute, and a drug violation within a school zone. In view of the fact that the judge, in his jury instructions, did not distinguish between the bags of cocaine found in the car and the cocaine seized from the defendant's person during booking, it is possible that all of the three drug-related convictions may have been based, in whole or in part, on evidence derived from the unlawful automobile search. All of the drug-related convictions, therefore, must be reversed.[12] While it is difficult to see how the Commonwealth will be able to proceed on the two distribution counts without the evidence of the drugs seized from the car, dismissal of those indictments would not be proper at this juncture. Where evidence is legally sufficient as presented to the jury, even if crucial elements of the evidence are deemed inadmissible on appeal, the Commonwealth retains the right to attempt a retrial. See *Kater* v. *Commonwealth*, 421 Mass. 17, 18 (1995). See also *Lockhart* v. *Nelson*, 488 U.S. 33, 40-41 (1988).

The judgments are reversed and the verdicts are set aside. The case is remanded to the District Court for such further

---

[12]There is, however, an open issue whether the evidence obtained during the search at the police station was derived from the illegal search of the defendant's automobile. The record as developed to date is not clear. See *Wong Sun* v. *United States*, 371 U.S. 471, 484-488 (1963) (explaining derivative evidence rule). The defendant had been arrested for driving with a suspended license before the search of the car; presumably, even if no drugs had been found there, he nonetheless would have been taken to the police station and searched during booking. Yet, if further proceedings do ensue, the defendant will have an opportunity to test the legality of his search at the police station by means of a further motion to suppress or otherwise.

proceedings, consistent with this opinion, as the Commonwealth may elect to pursue.

*So ordered.*

BROWN, J. (concurring). Although I am in substantial agreement with the reasoning of the majority, I write separately because I think this case may be decided on different grounds. In my opinion, this case is controlled in material respects by *Commonwealth* v. *Pacheco*, 51 Mass. App. Ct. 736, 742 (2001), in that, to me, this is just another instance in which the police impermissibly used a questionable inventory procedure as a pretext to conceal an investigatory motive. See *Commonwealth* v. *Sullo*, 26 Mass. App. Ct. 766, 772 (1989).

In addition, I note that the judge's legal conclusions are not supported by the record. In these circumstances, and in light of the allocation of evidentiary burdens here (see *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 [1974]), the search of the automobile cannot be justified as an inventory search, or on any other proper basis. See *Commonwealth* v. *Peters*, 48 Mass. App. Ct. 15, 20-21 (1999). In short, suppression of the evidence seized from the automobile is appropriate because the Commonwealth did not proffer sufficient evidence from which to conclude that the inventory policy satisfied constitutional requirements or that police conduct in these particular circumstances conformed to the policy in any event.

This case provides a good example of the peril inherent in failing to introduce a copy of a written inventory search procedure where the government seeks to justify a warrantless search on that basis. While it might be possible for the Commonwealth to support its burden of proof without such evidence in a particular case, it is unlikely as a general matter that the requisite inquiry into the scope and application of such a procedure may be made on the basis of oral testimony alone. See *Commonwealth* v. *Ellerbe*, 430 Mass. 769, 774-777 & n.10 (2000) (reference to text of written guidelines crucial to analysis). The Commonwealth is put on notice that in future cases, absent an explanation for the omission, the failure to

introduce a written copy of an inventory search procedure, standing alone, may provide a basis for concluding that a search was unlawful. See *Commonwealth* v. *Peters*, 48 Mass. App. Ct. at 20 & n.6.