NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

17-P-1262                                    Appeals Court

COMMONWEALTH  vs.  SHANE JUDGE.

No. 17-P-1262.

Bristol.    September 13, 2018. - March 28, 2019.

Present:  Wolohojian, Lemire, & Englander, JJ.

Controlled Substances.  Practice, Criminal, Motion to suppress, Parole.  Parole.  Search and Seizure, Expectation of privacy, Reasonable suspicion, Protective sweep, Plain view, Administrative inspection.  Privacy.

Indictments found and returned in the Superior Court Department on July 30, 2015.

A pretrial motion to suppress evidence was heard by Gregg J. Pasquale, J.

An application for leave to prosecute an interlocutory appeal was allowed by Margot Botsford, J., in the Supreme Judicial Court for the County of Suffolk, and the appeal was reported by her to the Appeals Court.

David B. Mark, Assistant District Attorney, for the Commonwealth.
Diana Cowhey-McDermott for the defendant.

LEMIRE, J.  After an evidentiary hearing, a judge of the

Superior Court allowed the defendant's motion to suppress

evidence found in his bedroom during a routine parole home visit. The judge found that the parole officer lacked reasonable suspicion to enter the bedroom, and that the entry could not be justified as a protective sweep. After receiving leave from a single justice of the Supreme Judicial Court, see Mass. R. Crim. P. 15 (a) (2), as amended, 476 Mass. 1501 (2017), the Commonwealth brings this interlocutory appeal challenging the order. We affirm.

1. Facts. We summarize the judge's detailed findings of fact, supplementing with additional facts as necessary from testimony and documentary evidence that he implicitly credited. See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007).

On May 22, 2015, the defendant, who was serving a criminal sentence, was released from a house of correction and placed on parole. On the day of his release, he met with a transitional parole officer who reviewed several forms with him and provided him with documents, including a parole manual and a certificate of parole, the latter of which formally allowed him to be released from custody.

The defendant's certificate of parole, which he was required to sign, stated that he was released conditioned on his compliance with the rules set out in the parole manual. The parole manual indicated that the defendant's primary parole officer would visit him "at home, work, school or other place in

the community with or without notifying [him] in advance."
According to the manual, unannounced home visits could occur "at
reasonable hours including weekends," or at any time in
emergency situations.  The manual is silent as to the frequency,
duration, or scope of routine home visits.

The manual indicates that parole officers are permitted to
"search a parolee's home and property and seize contraband,"
defining "search" as including examination of areas "closed from
general public view, with some measure of intrusion, for the
purpose of detecting," but explicitly excluding "[v]isual
observation of an open space."  The manual states that parolees
are required to allow parole officers to conduct searches of
their person, home, and property, but that officers "may insist
upon a search only when that officer has reason to believe that
[the parolee] ha[s] contraband or illegal items in [the
parolee's] possession or control," or that the parolee has used
such items.[1]

Approximately one month after his release, on June 23,
2015, at around 8:00 A.M., the defendant's primary parole

---

[1] We note that the Commonwealth did not argue that the
defendant consented to the search; as such, we do not address
the issue.  Although the manual requires the parolee to sign a
consent to search form in which the parolee agrees to "consent
to the search of [the parolee's] person, premises and property
owned by [him] and/or under [his] care, custody and control,
without a search warrant," the defendant did not sign this form.

officer, Richard Lyons, and another parole officer, Richard Valenti, arrived at the defendant's residence in order to conduct a routine home visit, and knocked on the front door.[2] After a pause of between thirty seconds and one minute, Lyons heard the defendant say, "Hold on." After another minute, the defendant's girlfriend, who appeared uneasy and confused, opened the door and the parole officers entered the home. The defendant emerged from the bathroom after about ten seconds, and Lyons escorted him back to the bathroom to provide a urine sample for drug testing.[3] Valenti asked the defendant's girlfriend if anyone else was in the apartment, and she responded in the negative. At his request, she then directed him to the defendant's bedroom.

Valenti entered the bedroom and observed razor blades, a digital scale, a white rock-like substance he believed to be "crack" cocaine, and multiple small plastic bags of a substance he believed to be heroin, all in plain view on a dresser. The defendant was subsequently arrested.[4]

---

[2] Though Valenti and Lyons each implied without explicitly stating that their visit was unannounced, the defendant subsequently testified that Lyons had notified him of the impending visit the day earlier. The judge made no findings as to whether the defendant had been previously notified of the home visit.

[3] A condition of the defendant's parole was that he remain free from illegal drug use.

2.  Discussion.  "In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error and leave to the judge the responsibility of determining the weight and credibility to be given . . . testimony presented at the motion hearing." Commonwealth v. Meneus, 476 Mass. 231, 234 (2017), quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004).  We "independently determine the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. DePeiza, 449 Mass. 367, 369 (2007).

a.  Reasonable suspicion.  The Commonwealth argues, contrary to the judge's findings below, that Valenti's entry into the defendant's bedroom was justified by reasonable suspicion that the defendant was violating the terms of his parole.  We disagree.[5]

Though parolees have a significantly diminished expectation of privacy in their homes, their privacy interest is not extinguished.  See Commonwealth v. Moore, 473 Mass. 481, 487 (2016).  The warrantless investigative search of a parolee's

---

[4] The defendant made inculpatory statements to Lyons as well as to the arresting police officer.  The judge suppressed these statements as fruits of the unlawful search.

[5] We note that the Commonwealth also contends, and we agree, that unlike the case of Commonwealth v. Moore, 473 Mass. 481 (2016), the search here was not an investigatory search and is best characterized as an administrative search.  Id. at 483-484.

home is accordingly reviewed using "the reasonable suspicion standard associated with stop and frisks." Id. at 488. Parole conditions of release may not lower this standard by "contract[ing] around the reasonable suspicion requirement [and] making the issuance of a prisoner's parole subject to suspicionless searches and seizures of his home." Id. at 487 n.6.

The Commonwealth argues that the delay after knocking but before the parole officers were admitted to the defendant's home, the demeanor of the defendant's girlfriend, and the defendant's criminal history all combined to form reasonable suspicion that the defendant "ha[d] violated, or [was] about to violate, a condition of his parole," justifying the search of his bedroom. Id. at 482-483.

Assuming without deciding that the parole officers had reasonable suspicion to believe that the defendant had violated the conditions of his parole based on this combination of factors, the search of the bedroom remained unreasonable because the scope of the search at issue exceeded that justified by any suspicion raised by the circumstances.

Searches "must be 'strictly tied to and justified by' the circumstances which render[] [their] initiation permissible." Commonwealth v. Silva, 366 Mass. 402, 407 (1974), quoting Terry v. Ohio, 392 U.S. 1, 19 (1968). "The degree of intrusiveness

that is permitted is that which is 'proportional to the degree of suspicion that prompted the intrusion.'"  Commonwealth v. Moses, 408 Mass. 136, 141 (1990), quoting Commonwealth v. Borges, 395 Mass. 788, 794 (1985).

Here, the parole officers heard the defendant say, "Hold on," from inside the apartment and, once they were admitted by the defendant's girlfriend, saw the defendant exit the bathroom after around ten seconds.  The arguable inference arising from these facts is that the defendant had attempted to conceal contraband in the bathroom or on his person, or that he had attempted to destroy contraband while in the bathroom.  The facts, however, provide no reason to believe that the defendant had secreted contraband in his bedroom.

Because the defendant's bedroom was not reasonably connected to any suspicion arising from the circumstances, the judge was correct in determining that the search of the bedroom cannot be justified on that basis.

b.  Protective sweep.  The Commonwealth's contention that Valenti's entry into the bedroom was justified as a protective sweep is equally unavailing.  A protective sweep requires a reasonable belief "based on 'specific and articulable facts' that the area could harbor a dangerous individual." Commonwealth v. Matos, 78 Mass. App. Ct. 156, 159 (2010), quoting Maryland v. Buie, 494 U.S. 325, 327 (1990).  Here, no

evidence was presented at the motion hearing suggesting that the defendant had a record of violence or firearm use.  Contrast Commonwealth v. DeJesus, 70 Mass. App. Ct. 114, 120 (2007). There was no articulable reason to believe that dangerous individuals were in the home, and the defendant "from all appearances, was completely compliant" with the parole officers. Commonwealth v. Colon, 88 Mass. App. Ct. 579, 581 (2015).  The home was familiar to Lyons, who had previously conducted a home visit and had met with the defendant's girlfriend in order to approve the residence prior to the defendant's release.[6]  In these circumstances, there was no evidence of any danger presented by the defendant's bedroom, and a protective sweep was not justified.

c.  Special needs search.  The Commonwealth argues that entry into the defendant's bedroom was permitted even without reasonable suspicion because routine parole home visits qualify as an exception to the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights as special needs or administrative searches.

---

[6] Though Lyons testified that there was a pit bull dog in the home during his previous visit, he additionally testified that the dog was "somewhat friendly" and "wasn't lunging or barking [at him] . . . so [he] wasn't too concerned" about it. The Commonwealth has not argued that the possible presence of the dog served to justify a protective sweep.

We have allowed "limited exceptions to the reasonable suspicion requirement where an intrusion is limited and serves a pressing public purpose."  Commonwealth v. Rodriguez, 430 Mass. 577, 580-581 (2000).  See, e.g., Landry v. Attorney Gen., 429 Mass. 336, 350 (1999) (routinely obtaining and analyzing deoxyribonucleic acid from convicted persons for use in government database); Commonwealth v. McGeoghegan, 389 Mass. 137, 143-144 (1983) (sobriety checkpoint roadblocks); Commonwealth v. Wilson, 389 Mass. 115, 117 (1983) (prisoner inventory searches); Commonwealth v. Harris, 383 Mass. 655, 657 (1981) (metal detector searches at entrance to court house); Commonwealth v. Smith, 72 Mass. App. Ct. 175, 180-181 (2008) (searches at entrance to public high school).  Such a search must be proportional to its purpose, and "be as limited in its intrusiveness as is consistent with satisfaction of the administrative need that justifies it."  Commonwealth v. Carkhuff, 441 Mass. 122, 127 (2004), quoting United States v. Davis, 482 F.2d 893, 910 (9th Cir. 1973).  Prior notice of such searches may minimize the degree of intrusiveness of the search, but does not render the search automatically reasonable.  See Commonwealth v. Garcia-German, 90 Mass. App. Ct. 753, 760 (2016).

Administrative and special needs searches "must be conducted as part of a scheme that has as its purpose something

'other than the gathering of evidence for criminal prosecutions.'" Carkhuff, 441 Mass. at 126, quoting Harris, 383 Mass. at 657. See Commonwealth v. Sullo, 26 Mass. App. Ct. 766, 768 (1989) (administrative searches "may not become a cover or pretext for an investigative search"). As such, searches in this category generally must be conducted pursuant to a neutral policy that limits both arbitrariness and the discretion of the officials conducting the search. See Garcia-German, 90 Mass. App. Ct. at 758. "[W]ritten policies and procedures serve to ensure that an administrative search is conducted consistently with the neutral purposes that justify it, that the decision to search is the result of the protocol rather than a discretionary determination to search, and that 'there is no significant danger of hindsight justification.'" Id., quoting Commonwealth v. Ford, 394 Mass. 421, 425 (1985).

We turn now to the case at bar. We observe that "the parole system entrusts to the Commonwealth the custody and supervision of parolees, affording them an established alternative to the incarceration to which they were sentenced." Moore, 473 Mass. at 485. During the period of parole, a parolee is "effectively a ward of the Commonwealth." Id. The Commonwealth thus has an "established and indisputable interest" in the ability to mandate periodic access by parole officers to the homes of parolees without prior announcement, in order to

fulfill its custodial and supervisory duties.  Landry, 429 Mass. at 347.  Because "the Commonwealth's supervisory interests are more significant than a parolee's diminished expectation of privacy," the balance of interests weighs in favor of permitting a system of routine parole home visits.  Moore, supra at 486.[7]

To survive constitutional review, however, such a system must be noninvestigatory and conducted pursuant to standard, neutral procedures.  See, e.g., Commonwealth v. Anderson, 406 Mass. 343, 347 (1989) (roadblock must "meet standard, neutral guidelines, and be conducted pursuant to a plan devised in advance by law enforcement supervisory personnel"); Commonwealth v. Bishop, 402 Mass. 449, 451 (1988) (written standard policies required to justify inventory search).

In the case at bar, the Commonwealth has failed to introduce any internal parole board policy guiding parole officers in their execution of routine home visits.  To the extent that the parolee manual included in the record represents parole board policy, unannounced routine home visits are

---

[7] We note the defendant's concession that routine parole home visits to some areas of a parolee's residence, even without reasonable suspicion, are constitutionally permissible.  The defendant appears to argue only that those visits may not extend beyond the common areas of the residence to include more private areas such as bedrooms.  We note as well that Moore, 473 Mass. at 487, addressed the standards for investigative searches of parolee residences.  We do not deal here with an investigatory search, but rather with an administrative home visit.

essentially without mandate or limit, to a degree that "unacceptably invites the exercise of [parole] officer discretion." Commonwealth v. Peters, 48 Mass. App. Ct. 15, 21 (1999), quoting Commonwealth v. Rostad, 410 Mass. 618, 622 (1991).

Assuming that a more detailed parole board policy on routine home visits exists, "given the omissions in the Commonwealth's proof, there is no way for a court to scrutinize what the policy encompassed and the precision with which the procedures set forth therein were defined," or whether, if it exists, officers complied with such a policy in the case at bar. Commonwealth v. Silva, 61 Mass. App. Ct. 28, 36 (2004) (suppression required where Commonwealth did not introduce sufficient evidence as to policies allowing police to search motor vehicle for ownership information prior to towing). Accord Peters, 48 Mass. App. Ct. at 20-21 (suppression required where Commonwealth failed to introduce motor vehicle inventory policy). We are thus unable to conduct a constitutional review to determine what, if any, constraint limited the discretion given the parole officers here in the frequency or the scope of routine home visits to parolees, and whether a tour of the entire home is mandated during such visits, or merely permitted.

As we have in analogous contexts, we now hold that evidence seized from a parolee's home during routine parole home

visits without prior reasonable suspicion must be suppressed unless the visit is conducted pursuant to a neutral written policy that provides standard procedures and limits parole officer discretion.[8]  Cf. <u>Anderson</u>, 406 Mass. at 349-350; <u>Bishop</u>, 402 Mass. at 451.  Because the Commonwealth has not adequately justified the search of the defendant's bedroom based on reasonable suspicion tied to that bedroom or a neutral written policy, we must affirm.

<u>Order allowing motion to</u>
<u>suppress affirmed</u>.

---

[8] We express no opinion on the permissible parameters of a routine parole home visit policy, including whether any such policy could mandate that parole officers conduct a protective sweep of the premises prior to conducting a routine visit.  We also note that reasonable suspicion could develop during the routine home visit.