Commonwealth *vs.* Gilberto M. Goncalves.

No. 03-P-744.

Plymouth. May 6, 2004. - September 29, 2004.

Present: Laurence, Brown, & Mills, JJ.

*Search and Seizure,* Automobile, Impoundment of vehicle, Inventory, Plain view. *Constitutional Law,* Search and seizure.

At a hearing on a criminal defendant's pretrial motion to suppress evidence, the District Court judge erred in ordering the suppression of a firearm recovered by police from the defendant's automobile at the time of his arrest for driving with a suspended license, where the police officer's actions (leaning inside the automobile and turning the ignition off) were merely those physically necessary to effect a lawful impoundment, and thus his seizure of a handgun in plain view while carrying out those duties was lawful. [155-158]

Complaint received and sworn to in the Brockton Division of the District Court Department on May 14, 2002.

A pretrial motion to suppress evidence was heard by *James F.X. Dinneen,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Roderick L. Ireland,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Therese M. Wright,* Assistant District Attorney, for the Commonwealth.

*Barry P. Wilson* for the defendant.

Brown, J. After a hearing on the defendant's pretrial motion, a judge of the District Court Department ordered the suppression of a firearm recovered from the defendant's automobile at the time of his arrest for driving with a suspended license.[1] A

[1]A complaint issued in the Brockton District Court charging the defendant with unlawful possession of a firearm, G. L. c. 269, § 10(*a*), and unlawful

single justice of the Supreme Judicial Court granted the Commonwealth's request for interlocutory review. We reverse and remand the case for further proceedings in the District Court.

We summarize the findings of the motion judge, supplemented where necessary to provide context with uncontroverted evidence adduced at the suppression hearing. See *Commonwealth* v. *Silva*, 61 Mass. App. Ct. 28, 30 (2004). While on traffic patrol in a marked cruiser, Officer Robert Smith of the Brockton police department stopped the defendant for failing to obey a stop sign. During a subsequent records check, Smith discovered that the defendant's license to drive had been suspended. He immediately asked the defendant to step out of his vehicle, and placed him under arrest.

The defendant was alone in his car at the time of his arrest, and the vehicle was stopped along the roadside in an area in which parking was not permitted. At about this time, another Brockton police officer, Paul Khoury, arrived on the scene. After conferring, the officers decided that Smith would transport the defendant to the police station for booking, while Khoury would wait with the defendant's vehicle until a tow truck arrived. The motion judge determined that the removal of the defendant's car was required, as there was no one else to drive it away, and it was parked in a no-parking area.

Turning his attention to the defendant's vehicle, Khoury noticed that the driver's side door was open, and that the engine was still running. The officer walked over to the defendant's car, leaned inside, and turned the ignition off. As he leaned into the vehicle, Khoury spotted the barrel of a handgun on the driver's side floor. After conferring with Smith, he seized the weapon and brought it to the station for processing. Other relevant facts are included in our analysis as necessary.

The defendant takes the view that what occurred here was an inventory search. Because the Brockton police have no written policy defining a standardized procedure for such searches, the defendant contends, citing *Commonwealth* v. *Bishop*, 402 Mass.

possession of ammunition, G. L. c. 269, § 10(*h*), as well as various motor vehicle offenses (including driving with a suspended license, G. L. c. 90, § 23).

449 (1988), that Khoury's actions were unlawful.[2] Suppression, the defendant argues, is the ineluctable result.

Were we to assume that by leaning into the defendant's vehicle to turn off the ignition, Khoury had in fact engaged in an inventory search, suppression might well be required here. *Bishop* established a bright-line rule for assessing the reasonableness of automobile inventory searches, and as noted, the Brockton police department manifestly failed to comply with those requirements. However, after a careful review of the record, we conclude that no inventory search occurred in this case.

Recently, in *Commonwealth* v. *Silva*, 61 Mass. App. Ct. at 31-37, we had occasion to consider the precise question when something less than a wholesale search of an impounded vehicle nonetheless constitutes an inventory search, and so implicates the requirements of *Bishop*. In *Silva*, after arresting the defendant for driving with a suspended license, police impounded his vehicle. Allegedly to obtain registration information that could be passed along to the tow truck driver, a police officer entered the defendant's vehicle and reached for the glove compartment. While doing so, he spotted several bags of cocaine wedged between the passenger seat cushions.

In *Silva*, we concluded that the officer's entry for the purpose of locating the registration documents amounted to an inventory search, irrespective of the limited scope of the intrusion. As we put it in *Silva*: "[*Bishop*] appl[ies] to a police search to gather documents, papers, or records from within a car. This is so even if . . . such a record-based search is less expansive than a full inventory search." *Id.* at 33. The holding in *Silva* was grounded in the general concept that whenever an officer intrudes into a private space, it amounts to a search for constitutional purposes, regardless of the officer's subjective intent. See *Commonwealth* v. *Ford*, 394 Mass. 421, 423 (1985).

---

[2]At the outset it is worth noting that, but for the failure of the Brockton police department to promulgate a written inventory search policy, this appeal likely could have been avoided. It has now been sixteen years since the Supreme Judicial Court announced, in *Commonwealth* v. *Bishop*, 402 Mass. at 451, that inventory searches are per se unreasonable if not conducted pursuant to standard written guidelines. It is troubling, to say the least, that a major urban police force apparently has yet to propound such written search procedures.

There are, however, important differences between the officer's actions in *Silva* and Khoury's conduct here. These differences, we conclude, mandate different outcomes.

While we held in *Silva* that even the brief foray into the defendant's vehicle amounted to an inventory search, we also acknowledged the settled distinction between the physical act of impoundment and any ancillary inventory search. As we stated in *Silva*, "impoundment of a car and an inventory search of a car are not synonymous, and the constitutional analysis is not unilateral." *Commonwealth* v. *Silva*, 61 Mass. App. Ct. at 33. Rather, the question of the lawfulness of the initial impoundment of a vehicle is a separate inquiry — implicating distinct standards — from the question of the lawfulness of any subsequent inventory search. See *Commonwealth* v. *Ellerbe*, 430 Mass. 769, 772-773 (2000). See also *Commonwealth* v. *Garcia*, 409 Mass. 675, 678 (1991).

To the extent that impoundment typically entails but a modest intrusion on privacy interests, the Supreme Judicial Court has determined that a vehicle may be impounded for noninvestigatory reasons when such action is "supported by public safety concerns or by the danger of theft or vandalism to a vehicle left unattended." *Commonwealth* v. *Daley*, 423 Mass. 747, 750 (1996). See *South Dakota* v. *Opperman*, 428 U.S. 364, 369 (1976). The constitutional protections delineated in *Bishop* have never been held to apply to the impoundment itself. Once public safety or security concerns exist to justify the decision to impound a vehicle, an officer (or such person as he might designate) is empowered to carry out any physical act minimally necessary to accomplish that purpose — again, without implicating *Bishop*.

We implicitly acknowledged this principle in *Commonwealth* v. *Silva*, 61 Mass. App. Ct. at 33 n.6, where we observed: "[h]ere, there was more than an impoundment; there was a search. It cannot logically be argued that a search of the glove compartment *was physically necessary to accomplish the impoundment* and towing" (emphasis added). By contrast, in this case, turning off the ignition and closing the car door were, in fact, "physically necessary" to accomplish the impoundment. Provided Khoury had a lawful basis for impounding the car —

and we agree with the motion judge that he did — he was entitled to enter the car to turn off the ignition.

Having established that Khoury did not transgress constitutional limits by leaning into the car to turn off the ignition before it was towed, we conclude that the seizure of the gun is justified by reference to the plain view doctrine. "Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Commonwealth* v. *Santana*, 420 Mass. 205, 211 (1995), quoting from *Minnesota* v. *Dickerson*, 508 U.S. 366, 375 (1993). Here, all of these requirements were met; Khoury entered the vehicle lawfully to effect the impoundment, and so was within his rights to seize the gun.

Our conclusion in this regard is supported by *Commonwealth* v. *Ford*, 394 Mass. at 424 n.1. There, the Supreme Judicial Court indicated that "entry into an impounded vehicle . . . to secure the vehicle," including specifically for the purpose of "remov[ing] keys," would not constitute an inventory search. *Ibid.* Moreover, the court concluded that the seizure of items in plain view, including firearms, during such an entry was "constitutionally proper." So too, here. In these circumstances, the defendant's motion to suppress should have been denied. See *Harris* v. *United States*, 390 U.S. 234, 236 (1968) (evidence discovered in plain view while conducting inventory search of impounded vehicle is subject to warrantless seizure). Cf. *Commonwealth* v. *Santana*, 420 Mass. at 210-212 (no constitutional violation where police officer leans into vehicle to replace container and in so doing sees, and then seizes, contraband in plain view).[3]

Deciding as we do, we have no occasion to discuss whether

[3]We find no merit in the defendant's argument that because Khoury "glanced around" while removing the keys from the ignition, the plain view doctrine does not apply. As noted above, the plain view doctrine merely requires police to be "lawfully in a position from which they view an object." *Commonwealth* v. *Santana*, 420 Mass. at 211 (citation omitted). The defendant has cited no case that requires police, once lawfully in a place, to avert their eyes from areas in which contraband might be located. We reject the defendant's argument for a novel and unsupported interpretation of the plain

on the particular facts of this case, Khoury would have been entitled to enter the defendant's car for the purpose of turning off the ignition and removing the keys under the exigency exception to the warrant requirement, i.e., where preserving public safety requires police or other government agents to intrude on private spaces.[4] See *Commonwealth* v. *Marchione,* 384 Mass. 8, 10-11 (1981). See also *Commonwealth* v. *Hurd,* 29 Mass. App. Ct. 929, 930 (1990), quoting from *Commonwealth* v. *Marchione,* 384 Mass. at 11.

In any event, as we have already concluded that there was no inventory search in this case, it is unnecessary to rely on the exigency exception to the warrant requirement here. Khoury's actions were merely those physically necessary to effect a lawful impoundment. His seizure of the gun in plain view while carrying out these duties was lawful.

The order allowing the defendant's motion to suppress is vacated; a new order denying the defendant's motion shall enter in its place. The case is remanded to the District Court Department for such further proceedings as the Commonwealth may elect to pursue.

*So ordered.*

---

view doctrine which, in any event, fails to satisfy the threshold requirements of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Needless to say, had Khoury moved around in the vehicle beyond what was minimally necessary to effect the impoundment, a different outcome might well be indicated. That, however, did not occur. The motion judge specifically found that as Khoury "leaned into the car to get the keys," the gun "caught his eye."

[4] We observe in passing that the level of threat necessary to trigger the exigency exception to the warrant requirement is by no means equivalent to the relatively modest level of public safety concern required to support the impoundment of a vehicle. See *Commonwealth* v. *DiGeronimo,* 38 Mass. App. Ct. 714, 723 (1995).