## COMMONWEALTH *vs.* JERRY BIENVENU[1]
### (and a companion case[2]).

No. 04-P-420.

Plymouth. February 17, 2005. - June 2, 2005.

Present: ARMSTRONG, C.J., BROWN, & KAFKER, JJ.

*Controlled Substances. Joint Enterprise. Constitutional Law,* Search and seizure. *Threshold Police Inquiry. Search and Seizure,* Threshold police inquiry, Motor vehicle, Impoundment of vehicle, Inventory. *Evidence,* Expert opinion, Joint enterprise. *Witness,* Expert. *Practice, Criminal,* Severance.

A Superior Court judge properly denied two criminal defendants' motions to suppress evidence that police officers seized from one defendant's vehicle during an inventory search following impoundment of the vehicle, where the impoundment was proper based on concerns for public safety, and where the inventory was conducted in accordance with written police department policy. [634-635]

At the trial of indictments charging two defendants with trafficking in a controlled substance in an amount of twenty-eight grams or more, the judge did not abuse his discretion in permitting a police officer to testify as an expert witness that the weight and purity of cocaine seized from the defendants' vehicle, coupled with an electronic scale and baggies, were consistent with an intent to distribute rather than with personal use, where the officer's testimony was beyond the ken of the jurors and appropriately explanatory. [635-637]

At a criminal trial, the judge did not abuse his discretion in denying the defendants' motions to sever, where neither defendant complied with the procedural requirements of severance, and where the defendants failed to show that any prejudice arising from the joinder was so compelling as to require severance. [637-638]

At the trial of indictments charging two defendants with trafficking in a controlled substance in an amount of twenty-eight grams or more, the judge properly denied one defendant's motion for a required finding of not guilty, where the evidence was sufficient to prove that that defendant was present at the scene of the crime, that she had knowledge of the crime in progress, and that she was a participant in the criminal endeavor. [638-639]

INDICTMENTS found and returned in the Superior Court Department on June 11, 2001.

---

[1]Also known as Ronald Desilier.

[2]Commonwealth *vs.* Gina J. Kapolis.

Pretrial motions to suppress evidence were heard by *Joseph M. Walker, III*, J., and the cases were tried before *Isaac Borenstein*, J.

*James M. Fox* for Jerry Bienvenu.

*Kevin J. Reddington* for Gina J. Kapolis.

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

Brown, J. A Superior Court jury returned guilty verdicts against the defendants, Jerry Bienvenu and Gina Kapolis, for trafficking in a controlled substance (cocaine) in an amount of twenty-eight grams or more. On appeal, the defendants claim that the judge erred in denying their motions to suppress evidence, in allowing a police officer to testify as an expert witness, and in failing to sever the trials of the codefendants. Kapolis also raises a challenge to the sufficiency of the evidence against her.[3] We affirm both defendants' convictions.

The following facts were adduced through the testimony of Whitman police Officers Stafford and Hanlon at the hearing on the motions to suppress. The relevant evidence adduced at trial is included within the discussions of the other legal issues raised.

At approximately 9:00 P.M. on December 5, 2000, Officer Stafford pulled over a vehicle on a two-lane road because only one of its headlights was illuminated. Bienvenu was driving, and Kapolis, the vehicle's owner, was in the passenger seat. When the officer asked Bienvenu his name, Bienvenu gave the name and date of birth of one Ronald Desilier. Bienvenu produced the car's registration, but no license. The officer smelled an odor of burnt marijuana coming from inside the car, and the defendant stated he had smoked a joint an hour earlier. At this point, Officer Hanlon arrived as backup. The officers learned that there was an arrest warrant out for Ronald Desilier and arrested Bienvenu on that warrant.

---

[3]She also argues that the trial judge eliminated the presumption of innocence when he asked the jury if they understood that "in a criminal case each defendant is presumed guilty until and if they are proven guilty beyond a reasonable doubt." As the judge immediately corrected this misstatement and properly charged the jury in his final charge on this point, the presumption of innocence was not eliminated. See, e.g., *Commonwealth* v. *Johnson*, 45 Mass. App. Ct. 473, 475-476 (1998).

Following Bienvenu's arrest, Officer Stafford questioned Kapolis. She told the officer that her license was suspended. The officer in turn instructed her to exit the vehicle, placed her in the police cruiser, and informed her that her vehicle would have to be towed.

Prior to having the vehicle towed, pursuant to the Whitman police department policy, Officers Stafford and Hanlon conducted an inventory search of the vehicle. As a result of the search, they found a "softball sized" gray duct-taped ball between the driver's seat and the gear shift in the console area. Officer Stafford peeled back a layer of the duct tape and uncovered what was later determined to be cocaine underneath some plastic and newspaper. The officers also found an electronic scale, a box of baggies, and some female clothing in the car.

1. *Motions to suppress.* The defendants argue that the motion judge erred in denying their motions to suppress, claiming that the search of the vehicle was warrantless and therefore unconstitutional, and that the search also violated the inventory policy of the Whitman police department.

"[T]he propriety of the impoundment of the vehicle is a threshold issue in determining the lawfulness of the inventory search." *Commonwealth* v. *Garcia*, 409 Mass. 675, 678 (1991). "The impoundment of a vehicle for noninvestigatory reasons is generally justified if supported by public safety concerns or by the danger of theft or vandalism to a vehicle left unattended." *Commonwealth* v. *Daley*, 423 Mass. 747, 750 (1996). "[W]here there is no practical available alternative, removal of a vehicle from a public roadway and an inventory search of it are constitutional." *Ibid.*

Here, neither defendant could lawfully drive the car. Bienvenu had been arrested and Kapolis's license had been suspended. See, e.g., *ibid.*; *Commonwealth* v. *Ellerbe*, 430 Mass. 769, 775-776 (2000). Additionally, the car was stopped at night alongside a two-lane road. For public safety reasons, it would have been imprudent to allow the car to remain on the side of the road. Thus, we agree with the motion judge that "[r]easonable concerns for public safety dictated that Kapolis's car be removed from the two-lane road in accordance with clearly-

defined Whitman Police Department policy."[4] Impoundment was justified in this instance.

As the car was properly impounded, the motion judge did not err in ruling that the officers conducted a valid inventory search of the vehicle pursuant to the Whitman police department policy.[5] The policy states: "Any vehicle in lawful custody of the Whitman Police Department shall be examined and an inventory search of the contents . . . shall be recorded. . . . [The] inventory shall include all containers whether open or closed and the contents therein." The officers' actions were consistent with the inventory policy's requirement that they search closed containers. "[P]olice may open closed but unlocked containers in conducting an inventory search . . . [p]rovided the written inventory policy requires them to do so." *Commonwealth* v. *Muckle*, 61 Mass. App. Ct. 678, 684 (2004). There was no error in denying the motions to suppress.[6] See *Commonwealth* v. *Caceres*, 413 Mass. 749, 755 (1992).

2. *Expert witness.* At trial, Detective Benton testified that the weight, sixty-three grams, and the purity, sixty-one percent, of the cocaine seized from the car, coupled with the electronic scale and the baggies, were consistent with an intent to distribute rather than with personal use. The defendants argue that their convictions must be reversed because Detective Benton, in testifying as an expert about the cocaine seized and the intent to

[4]Both defendants make much of the fact that Kapolis was not given an opportunity to make alternative arrangements. However, it is not incumbent upon the police officers to offer reasonable alternatives. See *Commonwealth* v. *Caceres*, 413 Mass. 749, 751 n.1 (1992); *Commonwealth* v. *Henley*, 63 Mass. App. Ct. 1, 5-6 (2005). Moreover, Kapolis did not tell the officers she did not want her car towed. See *Commonwealth* v. *Ellerbe*, 430 Mass. at 776. The defendants also argue that the Whitman inventory policy does not permit officers to search disabled vehicles. However, the provision of the policy they cite appears to apply to vehicles towed at the owner's request.

[5]The officers departed from proper procedure by failing to obtain the signature of the tow truck operator as required under the policy. The defendants argue that this invalidates the entire search. The motion judge, relying on *Commonwealth* v. *Garcia*, 409 Mass. at 685, correctly ruled that this deviation is not fatal and does not violate the defendants' constitutional rights.

[6]Deciding as we do, we have no occasion to discuss whether, under the automobile exception to the warrant requirement, the police had probable cause to search based on the odor of marijuana emanating from the vehicle. Cf. *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997).

distribute, usurped the jury's fact-finding function, thereby depriving the defendants of a fair trial.[7]

"It is settled law that trial judges have broad discretion to allow the use of narcotics investigators as experts in drug cases." *Commonwealth* v. *Miranda*, 441 Mass. 783, 793 (2004). "Expert testimony is generally admissible . . . . whenever it will aid the jury in reaching a decision, even if the expert's testimony touches on the ultimate issues that the jury must decide." *Commonwealth* v. *Woods*, 36 Mass. App. Ct. 950, 951 (1994), *S.C.*, 419 Mass. 366 (1995). "[I]n determining whether particular expert testimony is lawful, the better practice is to focus the analysis on whether the evidence is *explanatory*." *Commonwealth* v. *Tanner*, 45 Mass App. Ct. 576, 581 (1998) (emphasis in original). Detective Benton, a nonpercipient witness, testified to his experience and education in narcotics, as well as to the weight and purity of the cocaine found in the gray duct-taped ball. He stated that it had a street value of over $3,000. He elaborated that cocaine at sixty-one percent purity could be "stepped on" again.[8] The officer also testified that the baggies and the scale were consistent with the intent to distribute narcotics rather than personal use. See *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991). "Knowledge as to the significance of method of packaging, amount and purity of narcotics and different instrumentalities used to administer narcotics, as they relate to possession and possession with intent to distribute, is not within the realm of common experience." *Commonwealth* v. *Cordero*, 34 Mass. App. Ct. 923, 924 (1993). We conclude that the expert's testimony was beyond the ken of

[7]Bienvenu sought in a motion in limine to exclude Detective Benton's testimony; he also objected to the testimony at trial. Kapolis neither joined in Bienvenu's motion nor objected to the testimony at trial. We review the arguments of both defendants for an abuse of discretion, see *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991), as the issue was brought to the judge's attention, and he had an opportunity to "squarely consider and decide the question." Smith, Criminal Practice and Procedure § 1775 (2d ed. 1983). In any event, there was no error in the admission of the testimony.

[8]Detective Benton testified that "stepping on" is a process "used to make more of the drug." He stated: "they'll take, for example, a drug that may be [ninety] percent pure and step on it and cut it with another, usually a non-narcotic, but it can be a narcotic, and they'll make more of it for distribution, to make more money."

the jurors and appropriately explanatory, and did not intrude on the fact-finding function of the jury.

3. *Motions to sever.* The defendants claim that the judge abused his discretion by refusing their requests for severance because they asserted antagonistic defenses. "Absent a constitutional requirement for severance, joinder and severance are matters committed to the sound discretion of the trial judge." *Commonwealth* v. *McAfee*, 430 Mass. 483, 485 (1999). "Severance is required only where the defense of a defendant and that of a codefendant are 'antagonistic to the point of being mutually exclusive,' or where 'the prejudice resulting from a joint trial is so compelling that it prevents [the] defendant from obtaining a fair trial.' " *Commonwealth* v. *Suarez*, 59 Mass. App. Ct. 111, 118 (2003), quoting from *Commonwealth* v. *Stephens*, 44 Mass. App. Ct. 940, 944 (1998).

Neither defendant complied with the procedural requirements of severance. Pursuant to Mass.R.Crim.P. 9(d)(2), 378 Mass. 860 (1979), a motion "for relief from prejudicial joinder shall be in writing and made before trial and shall be supported by an affidavit setting forth the grounds upon which any alleged prejudice rests." Both defendants made oral motions to sever approximately one-half hour prior to trial. The motions were not set forth in writing. See *Commonwealth* v. *Dicato*, 19 Mass. App. Ct. 40, 43 (1984). Compare *Commonwealth* v. *Martinez*, 37 Mass. App. Ct. 948, 950 (1994) (motion may be made during trial only if based on ground not previously known; absent any pretrial agreement, defendant should have anticipated that codefendant would testify). There was no abuse of discretion in denying the motions on this procedural ground.

Substantively, the defendants have failed to show that any prejudice arising from joinder was so compelling as to require severance. Bienvenu did not testify that the gray duct-taped ball was Kapolis's, or that Kapolis knew that the ball contained cocaine. Further, not only were there eyewitnesses in this case who saw Kapolis and Bienvenu together in the car where the cocaine was found, but both defendants, while attempting to raise reasonable doubt about their own guilt, did not affirmatively point fingers at one another. See *Commonwealth* v. *Smith*, 418 Mass. 120, 126 (1994). This removes the case from

the purview of *Commonwealth* v. *Moran,* 387 Mass. 644, 654, 660 (1982), where the prosecution had "no eyewitnesses to the crime who could testify to the presence and participation of both defendants and therefore had to rely on each inculpating the other." *Commonwealth* v. *McAfee,* 430 Mass. at 487. Here, the jury could disbelieve both defendants' theories and instead credit the testimony of Officers Stafford and Hanlon. See *ibid.* "In short, this was not a case where each defendant was pitted against the other or sought to escape conviction by blaming his codefendant." *Id.* at 486. The judge did not abuse his discretion in denying the defendants' motions for severance.

4. *Kapolis's motion for required finding of not guilty.* Kapolis argues that the judge erred in denying her motion for a required finding of not guilty because there was insufficient evidence that she constructively possessed cocaine and insufficient evidence of a joint venture. Viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979), the evidence adduced at trial permitted the inference that Kapolis constructively possessed the cocaine and was a joint venturer in the trafficking of the cocaine. "[T]o prove constructive possession, the Commonwealth must present evidence that the defendant had both knowledge of the contraband and the ability and intention to exercise dominion and control over it." *Commonwealth* v. *Ortega,* 441 Mass. 170, 174 (2004). "Although mere presence where drugs are discovered is not enough to support an inference of possession of the drugs, the defendant's presence, coupled with a ' "plus" factor,' i.e., other incriminating evidence, may suffice." *Id.,* quoting from *Commonwealth* v. *Velasquez,* 48 Mass. App. Ct. 147, 149 (1999).

The evidence in this case provided the plus factor or factors required beyond mere presence to permit the jury to find that Kapolis had constructive possession of the cocaine. Kapolis was not only present in the vehicle (along with, inferably, some of her personal effects in the back seat in close proximity to a scale and a box of baggies), but she owned the vehicle, an additional incriminatory factor. See *Commonwealth* v. *Sanchez,* 40 Mass. App. Ct. 411, 416 (1996). See also *Commonwealth* v *Handy,* 30 Mass. App. Ct. 776, 781 n.5 (1991) (defendant's

ownership of premises is relevant inculpatory factor considered in determining whether he can be regarded as being in constructive possession of contraband found on those premises).

To establish a joint venture the Commonwealth must prove that Kapolis "was present at the scene of the crime, with knowledge that another intended to commit the crime or with intent to commit the crime, and by agreement was willing and available to help the other if necessary." *Commonwealth* v. *Stokes*, 440 Mass. 741, 745 (2004). There is little doubt that Kapolis was a joint venturer. She was present at the scene of the crime. Also, because she owned the vehicle used to transport the drugs and because the duct-taped ball of cocaine was placed very near to her, in plain view, between the driver's seat, the gear shift and the console area, it requires no stretch of the imagination to conclude that Kapolis had knowledge of the crime in progress, and that she was a participant in this criminal endeavor. See *Commonwealth* v. *Suarez*, 59 Mass. App. Ct. at 116. Her motion for a required finding was correctly denied.

> *Order denying motions to suppress affirmed.*
>
> *Judgments affirmed.*