Lowy, David A., J.
The defendant, Felipe Diaz (“Diaz”), is charged in the above-numbered indictment with possession of heroin with the intent to distribute. Diaz now moves to suppress evidence seized during the search of his motor vehicle and his cellular telephone. For the following reasons, Diaz’s motion is DENIED as to the evidence seized from his motor vehicle, but ALLOWED as to the evidence seized from his cellular telephone.
FINDINGS OF FACT
After an evidentiary hearing, the court finds the following facts.
On December 15,2008, at approximately 2:23 p.m., Officer Michael DiMeglio of the Lynn Police Department was on routine patrol with Officer Polonia in the area of West Green Street in Lynn. Officer DiMeglio observed a blue, old model pickup truck occupied by two individuals. He recognized the distinctive vehicle and believed that it belonged to Diaz. Officer DiMeglio had seen Diaz in the truck before. He recalled the license plate of the truck, and based upon information he had obtained previously, he knew Diaz’s license had been revoked. Officer DiMeglio checked the status of Diaz’s license by inputting the truck’s license plate number into his cruiser’s onboard computer. He learned that the truck was registered to Diaz and that Diaz’s license was still revoked. As he followed the truck down Union Street, Officer DiMeglio was able to identify Diaz visually as the operator of the vehicle.
Officer DiMeglio then activated his flashing lights and siren, and the truck pulled over about twelve inches from the curb and parallel to it. The truck was not in a parking space. Diaz, in response to Officer DiMeglio’s request, produced a registration, but no license. Diaz was then informed that he had been stopped because his license was revoked. Meanwhile, Officer Polonia went to the passenger side of the truck and spoke to the other occupant of the vehicle, Jerome Smith. Smith’s information was checked, and he had no outstanding warrants. He also did not have a license. As a result, Smith was allowed to leave the scene.
After confirming that Diaz was driving without a valid license, the officers removed him from the truck, handcuffed him, and placed him in a cruiser. Because Union Street is a busy street with parking on both sides, they requested a tow truck for Diaz’s vehicle. The senior officer on duty, Sergeant Godbout, authorized the tow. The police did not ask Diaz if he knew someone who was available to drive the truck from where it was located on Union Street. Meanwhile, pursuant to Lynn Police Department policy, the officers began searching Diaz’s vehicle in order to create an inventory of his belongings. During the inventory search, Officers DiMeglio and Polonia discovered seven clear plastic “twists” containing a light brown powdery substance behind the front seat. They seized the twists, and tests later confirmed that the substance was heroin. Diaz was in the police cruiser during this search.
Officer Polonia read Diaz his Miranda rights while in the cruiser. Although Diaz’s first language is Spanish and Officer Polonia also speaks Spanish, they conversed in English. Diaz indicated to the officer that he understood each right as it was given to him. Officer Polonia then asked Diaz what he was doing selling drugs. Diaz stated that the drugs were for personal use.
While Diaz was being booked at the police station, his cellular telephone began ringing. The cellular telephone and cash he was canying had already been seized. After four to five calls from different numbers in approximately a twenty-minute period, Officer Polonia picked up the cellular telephone the next time it rang, opened it, and answered the call. The female caller immediately said, “I’ll take three,” as Diaz yelled toward the receiver in English, “I’m at the police *96 station.” Answering another call, Officer Panacopolos heard a different caller identify himself as “Mike” and make statements indicating an interest in buying drugs. The cellular telephone continued to ring throughout the booking process.
RULINGS OF LAW I. The Search of the Vehicle
Diaz challenges the warrantless search of his vehicle that yielded the seven twists of heroin. Because the court concludes that this search was a lawful inventory search, Diaz’s motion to suppress the drugs seized from behind the front seat is denied.
An inventory search is one of the recognized exceptions to the warrant requirement. South Dakota v. Opperman, 428 U.S. 364, 369 (1976); Commonwealth v. Navarro, 2 Mass.App.Ct. 214, 218-20 (1974). The Commonwealth has the burden of establishing that the search of Diaz’s truck was a lawful inventory search. Commonwealth v. Horton, 63 Mass.App.Ct. 571, 576 n.4 (2005). “A lawful inventory search is contingent on the propriety of the impoundment of the car.” Commonwealth v. Brinson, 440 Mass. 609, 612 (2003). “Under both the Federal and Massachusetts Constitutions, analysis of the legitimacy of an inventory search of an impounded vehicle involves two related, but distinct, inquiries; (1) whether the im-poundment of the vehicle leading to the search meet[s] constitutional strictures, and (2) whether the conduct and scope of the search itself meet those strictures.” Commonwealth v. Henley, 63 Mass.App.Ct. 1, 5 (2005), quoting Commonwealth v. Ellerbe, 430 Mass. 769, 772-73 (2000). Diaz attacks the constitutionality of the inventory search under the first prong of this test, claiming that it was unreasonable under the circumstances to tow his truck.
Diaz argues that the officers failed to comply with the Lynn Police Department’s standard procedures for towing motor vehicles following an arrest. The written procedures are consolidated in a manual provided to all officers. According to the manual, all tows must be authorized by a sergeant or higher ranking officer who “shall respond to the scene of the requested tow and personally determine whether or not such a tow would be lawful.” It is the policy of the Lynn Police Department to conduct an administrative inventory of the contents of every motor vehicle authorized for tow. However, if an operator of a motor vehicle is arrested, before authorizing a tow “the Authorizing Officer must consider whether there is a practical, available alternative to the impoundment of the vehicle prior to any commencement of an inventory search ...” Diaz questions whether the authorizing officer, Sergeant Godbout, actually responded to the scene, or if he considered any alternatives to towing the truck.
The court credits the officers’ testimony that Sergeant Godbout responded to the scene and personally authorized the tow. Additionally, there was no practical, available alternative to towing the truck, and the Lynn Police substantially complied with Lynn Police Department written procedures in all other relevant respects. Even if Diaz could prove that the officers’ conduct deviated from formal policy, such evidence would not necessarily establish that the officers acted in denigration of Diaz’s constitutional rights. While the Supreme Judicial Court requires police to adhere to standardized written guidelines when executing the inventory search itself, see Commonwealth v. Bishop, 402 Mass. 449, 451 (1988), it has never held that the police must follow written guidelines dictating the circumstances in which the inventory search may be undertaken. See Commonwealth v. Goncalves, 62 Mass.App.Ct. 153, 156 (2004) (“The constitutional protections delineated in Bishop have never been held to apply to the impoundment itself’); see also Commonwealth v. Daley, 423 Mass. 747, 749-50 (1996); Commonwealth v. Carceres, 413 Mass. 749, 751 (1992). Instead, the impoundment of a vehicle is generally justified by reasons of public safety or the danger of theft or vandalism to a vehicle left unattended. Daley, 423 Mass. at 750. “(W]here there is no practical available alternative, removal of a vehicle from a public roadway and an inventory search of it are constitutional." Id. Unlike towing a vehicle after an arrest, which constitutes a modest intrusion on privacy interests under the circumstances, the ancillary inventory search is more invasive, and there is a greater risk that it may be used as a pretext for impermissible investigation. As a result, courts limit officers’ discretion by imposing the restriction that the search be performed pursuant to written, standardized procedures. See Bishop, 402 Mass. at 451; Commonwealth v. Ford, 394 Mass. 421, 426-28 (1985); see also Colorado v. Bertine, 479 U.S. 367, 376 (1987) (Blackmun, J., concurring). No Massachusetts court has decided whether the discretion to impound a vehicle, essentially an aspect of the police community caretaking function and, hence, non-investigatory in nature, see Brinson, 440 Mass. at 615-16, should be similarly circumscribed. In every instance where the defendant challenged the propriety of the impoundment after a motor vehicle stop, courts found that the officers had no practicable alternative to impoundment, and therefore no discretion to exercise. See Ellerbe, 430 Mass. at 774; Daley, 423 Mass, at 750; Caceres, 413 Mass. at 751-52; Commonwealth v. Bienvenu, 63 Mass.App.Ct. 632, 634 (2005); Henley, 63 Mass.App.Ct. at 5-6; Commonwealth v. Muckle, 61 Mass.App.Ct. 678, 682 (2004); Commonwealth v. Dunn, 34 Mass.App.Ct. 702, 703 (1993); cf. Commonwealth v. Murphy, 63 Mass.App.Ct. 11, 16 (2005) (improper determination to impound vehicle was a product of an unlawful inventory search of defendant’s person). Moreover, in those cases where the issue was raised, the failure to give the arrested drivers an opportunity to make alternative arrangements for the vehicles did not invalidate the subsequent impoundments and searches. See Daley, 423 Mass. at 750-51; Caceres, 413 Mass, at 751 n.1; *97 Bienvenu, 63 Mass.App.Ct. at 634. Courts have suggested in dicta that the requirement to seek a “practical available alternative” to impoundment does not extend beyond the immediate scene of the arrest. See Ellerbe, 430 Mass. at 775; Caceres, 413 Mass. at 751 n.2; Dunn, 34 Mass.App.Ct. at 703.
Here, as in the aforementioned cases, the circumstances of Diaz’s arrest presented the Lynn police officers with no practical available alternative to towing Diaz’s truck. The vehicle was stopped on a busy public way and in a position that impeded the free flow of traffic. Sergeant Godbout was justified in his belief that the vehicle, if left unattended, would create a public safety hazard. See Henley, 63 Mass.App.Ct. at 5; Bienvenu, 63 Mass.App.Ct. at 634. Neither Diaz nor his passenger, Smith, were licensed to drive the truck away from the location. In the absence of any other associates of Diaz who were immediately available to remove the vehicle on his behalf, Sergeant Godbout’s decision to authorize a tow was a reasonable one. See Muckle, 61 Mass.App.Ct. at 682. Although the arresting officers were aware that Diaz was a resident of Lynn, such that he possibly could have arranged for someone else to quickly retrieve his truck, they had no obligation to furnish that opportunity. See Ellerbe, 430 Mass, at 776 (“Reasonableness did not require police officers to guard the vehicle or to wait with the unlicensed passenger until a licensed driver could be produced to take control of it”). Finally, there is no evidence that the police used the impoundment as a pretext to search the vehicle. See Commonwealth v. Matchett, 386 Mass. 492, 509-10 (1982). Towing Diaz’s truck, therefore, met constitutional strictures and did not invalidate the subsequent inventory search.
II. The Cellular Telephone
Diaz also moves to suppress the evidence the Lynn police officers discovered when they answered his ringing cellular telephone during booking. Claiming a constitutionally protected privacy interest in his cellular telephone Diaz argues that both the callers’ statements and his own statements must be suppressed because the officers did not first obtain a warrant before answering the telephone, and no exception to the warrant requirement applied in the circumstances. The court agrees that the officers could not lawfully conduct a warrantless search of Diaz’s cellular telephone where the facts known to them at the time they were booking Diaz did not create probable cause to believe that he was selling heroin through his telephone.
Once Diaz was in custody at the police station, the officers possessed the authority to seize his cellular telephone pursuant to a routine inventory search of his person. See Illinois v. Lafayette, 462 U.S. 640, 643 (1983); Commonwealth v. Seng, 436 Mass. 537, 550-51 (2002). That authority, however, did not so clearly extend to the manipulation of the cellular telephone. As a threshold matter, the court concludes that a “search" occurred for constitutional purposes when the officers manipulated Diaz’s cellular telephone to answer incoming calls. See Arizona v. Hicks, 480 U.S. 321, 325 (1987); Commonwealth v. Ford, 394 Mass. 421, 423 (1985). Given that most cellular telephones must be opened or activated in some manner before they may be accessed, an individual has a subjective expectation of privacy in the contents of his or her cellular telephone. Moreover, communications in the nature of private messages have long been recognized as deserving of protection under the Fourth and Fourteenth Amendments of the United States Constitution. See United States v. Jacobsen, 466 U.S. 109, 122 (1984) (mail); Katz v. United States, 389 U.S. 347, 353 (1967) (oral statements). The Lynn police, therefore, intruded into an area in which society recognizes a reasonable expectation of privacy. See United States v. Finley, 477 F.3d 250, 259-60 (5th Cir. 2007); United States v. De La Paz, 43 F.Sup.2d 370, 376 (S.D.N.Y. 1999). Because Diaz’s cellular telephone was constitutionally protected, seizing the phone and then answering a call during booking implicated his rights under the Fourth Amendment and Article Fourteen of the Massachusetts Declaration of Rights. See Commonwealth v. Garcia, 3 Mass.App.Ct. 386, 392 (1993).
Warrantless searches are presumptively unreasonable under both the Federal and Massachusetts Constitutions unless they are shown to fall within “a few specifically established and well-delineated exceptions.” Katz, 389 U.S. at 357; see Commonwealth v. Viriyahiranpaiboon, 452 Mass. 224, 226 (1992). Courts acknowledge these exceptions on the premise that the Fourth Amendment’s ultimate touchstone is “reasonableness.” Brigham City v. Stuart, 547 U.S. 398, 403 (2006). Accordingly, a compelling law enforcement need to search a person or place before obtaining a warrant may validate the search, but only if the decision to forego seeking a warrant is objectively reasonable under the circumstances. See Samson v. California, 547 U.S. 843, 848 (2006); Commonwealth v. Catanzaro, 441 Mass. 46, 56 (2004). The court in United States v. Wurie, 612 F.Sup.2d 104 (D.Mass. 2009), noted that decisions on the federal level “trend heavily in favor of finding that the search incident to arrest or exigent circumstances exceptions apply to searches of the contents of cell phones.” Wurie, 612 F.Sup.2d at 109-10, and cases cited.
In Wurie, the defendant was indicted for possession of crack cocaine with intent to distribute. Previously, police had observed him drive to a convenience store and pick up an individual who had been standing in the parking lot, talking on the telephone, and watching passing traffic. Id. at 106. The defendant and the individual then drove a short distance, turned around, and returned to the convenience store. Id. At that point, the individual left the car and the defendant drove away. Id. Believing that they had just witnessed a drug transaction, the officers at the scene broad- *98 casted a description of the defendant’s vehicle while they confronted the suspected buyer. Id. They searched the suspect and found cocaine. Id. He admitted that he had purchased it from “B” who lived in South Boston. Id.
Meanwhile, patrolling officers arrested the defendant, whose first name began with the letter “B,” and took him to the police station. Wurie, 612 F.Sup.2d at 106. They seized two cellular telephones and $1,275 in cash from the defendant’s person, either immediately upon the defendant’s arrest or once they arrived at the police station. Id. Five to ten minutes after the defendant arrived at the police station, an officer inspected one of the cellular telephones and, without opening it, observed numerous calls logged from “My House” on the caller ID screen. Id. The telephone then rang and he flipped it open but did not answer. Id. The call was from “My House,” and the officer observed the incoming telephone number. Id. Checking the number in a public database, the officer learned that it was associated with an apartment in South Boston. Id. at 107. Based partially on the information from the cellular telephone, police obtained and executed a search warrant for the South Boston apartment and discovered drugs and contraband linked to the defendant. Id.
The District Court judge upheld the validity of the warrantless search of the defendant’s cellular telephone. Wurie, 612 F.Sup.2d at 110. He found that the police lawfully inspected the cellular telephone on a theory of a search incident to arrest. Id. Opening the cellular telephone and recording the “My House” number was within the officer’s authority because the officer “reasonably believed that the stored phone number would lead them to the location of Wurie’s suspected drug stash.” Id. In other words, there was probable cause supporting the connection between Wurie’s illegal conduct and the “My House” number appearing on his cellular telephone.
The actual facts of Diaz’s case are sufficiently different to warrant a different conclusion. The warrant-less search of Diaz’s cellular telephone cannot be justified as a search incident to arrest. Police officers may conduct a warrantless search of a person and the area within the person’s “immediate control” as a contemporaneous search incident to a lawful arrest. See Chimel v. California, 395 U.S. 752, 763 (1969); New York v. Belton, 453 U.S. 454, 459 (1981); Commonwealth v. Alvarado, 420 Mass. 542, 554 (1995). The scope of the search is “tied to and justified by” the twin rationales of Chimel: officer safety and the need to preserve evidence of criminality. Chimel, 395 U.S. at 763; Commonwealth v. Netto, 438 Mass. 686, 694-95 (2003); cf. Arizona v. Gant, 129 S.Ct. 1710, 1719 (2009) (holding that the Chimel rationales authorize police to search a vehicle incident to a recent occupant’s arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search). Ultimately, the reasonableness of the search depends on the circumstances of the arrest. See Commonwealth v. Elizondo, 428 Mass. 322, 324 (1998). The authority to search incident to a lawful arrest is narrower under Article Fourteen and G.L.c. 276, §1 than under the Fourth Amendment. In Commonwealth v. Madera, the Supreme Judicial Court explained that Massachusetts law allows police to search • containers carried by a lawfully arrested person provided there is also probable cause to believe the container is concealing evidence of the crime for which the arrest was made. 402 Mass. 156, 159 (1988).
Answering Diaz’s cellular telephone during booking was not a reasonable search incident to arrest for several reasons. First, the search of the cellular telephone was not contemporaneous with Diaz’s arrest. A substantial amount of time elapsed between the moments when Lynn police took Diaz into custody on Union Street and when the officers began answering his ringing cellular telephone at the station. During that period, the officers conducted an inventory search of Diaz’s truck, arranged for the truck to be towed, transported Diaz to the station, and then initiated the booking process. Testimony at the evidentiary hearing established that the incoming calls to Diaz’s telephone spanned a twenty-minute period that began in the cruiser when Diaz was being transported to the station. The delay between the arrest and the searches, therefore, was over twenty minutes, depending on the amount of time the police detained Diaz at the scene after his arrest. Massachusetts courts accord considerable significance to the requirement of contemporaneity. Commonwealth v. Pierre, 72 Mass.App.Ct. 580, 584-85 (2008), citing Alvarado, 420 Mass, at 546-47; see also Commonwealth v. Motta, 424 Mass. 117, 120 n.9 (1997) (where an arrestee’s car was towed to a secure lot and searched within five to ten minutes of its arrival at the station, the court upheld the search under the automobile exception but noted that “(i]n view of the fact that the search . . . was neither contemporaneous with the arrest nor for the purpose of protecting the safety of the officers, it is doubtful whether the search could be justified on [the] basis [of a search incident to arrest]”). Here, the search of Diaz’s telephone was clearly remote in time and place to the actual arrest, thereby diminishing the governmental interests at stake and reducing the need for a warrant-less search.
The search of the defendant’s cellular telephone in Wurie also took place at the police station. The sequence of events in Wurie, however, was more succinct and compressed when compared to the facts of this case.[1] More importantly, the search of the cellular telephone in Wurie was carefully limited to disclose only that information which the officer reasonably believed would lead to evidence of the crime for which the defendant was arrested. The logged histoiy of numerous “My House” calls on the caller ID screen was *99 in plain view of anyone making a cursoiy inspection of the unopened cellular telephone. The evidence that the police had gathered to that point — the large amount of cash the defendant was carrying, his possession of two cellular telephones, the fact that he had rented the car he was driving when he was arrested, the kind of drugs found on the defendant’s buyer, and the buyer’s description of “B’s” mode of drug dealing— led them to believe that the defendant was selling drugs out of a hidden mother cache. Wurie, 612 F.Sup.2d at 107. Consequently, the police suspected that they would find the cache at the “My House” location. According to the buyer, “B” lived in South Boston. The defendant, however, gave the police a home address in Dorchester. Id. In light of the defendant’s possible motive to conceal his true residence, the police reasonably recorded the “My House” number in an attempt to corroborate the contradicting home addresses. The police did not actually answer the call or access any other information stored in the telephone.
The search of Diaz’s telephone was not a “limited and reasonable” search incident to arrest like the search in Wurie. Id. at 110. Many cases upholding searches of cellular telephones incident to arrest involve the inspection of data stored in the telephones’ electronic memories. See, e.g., United States v. Parada, 289 F.Sup.2d 1291, 1303 (D. Kan. 2003); United States v. Lottie, 2008 WL 150046, at *3 (N.D.Ind. Jan. 4, 2008); United States v. Valdez, 2008 WL 360548, at *4 (E.D.Wis. Feb. 8, 2008). Like Wurie, these decisions often rely on logic analogizing cellular telephones to pager technology, or even wallets, address books, notebook paper, or any other personal effects that may display recorded information. Wurie, 612 F.Sup.2d at 109-10; see Finley, 477 F.3d at 260; United States v. McCray, 2009 WL 29607, at *7-10 (S.D.Ga. Dec. 5, 2008) (collecting cases). Compared to the kind of constrained scanning of tangible and persistent information that courts have found to be reasonable in the context of an arrest, the police practice of answering an arrestee’s telephone and “seizing” ephemeral words that were intended for the arrestee’s ears only constitutes a distinct, and arguably more intrusive, species of privacy invasions. See Berger v. New York, 388 U.S. 41, 56 (1967); see also Lopez v. United States, 373 U.S. 427, 441 (1963) (warning that “the fantastic advances in the field of electronic communication constitute a great danger to the privacy of the individual; . . . indiscriminate use of such devices in law enforcement raises grave constitutional questions . . .”) (Warren, C.J., concurring). By failing to identify himself immediately, an officer can take advantage of a caller’s reasonable expectation that the person answering the cellular telephone is its owner and engage in the functional equivalent of eavesdropping, if only for a moment. Because the officer would technically be a party to the conversation, answering an arrestee’s cellular telephone would not implicate the warrant requirement under G.L.c. 272, §99. Commonwealth v. Ramirez, 2007 WL 1829392, at *5 (Mass.Super. Feb. 27, 2007) [22 Mass. L. Rptr. 511). Nevertheless, the conduct borders on a category of searches demanding heightened scrutiny; hence, reasonableness requires that the police articulate firmer grounds to believe that the incoming call will furnish evidence of criminality. C.f. Commonwealth v. Thorpe, 384 Mass. 271, 280 (1981) (observing that the Legislature, when enacting G.L.c. 272, §99, proceeded on the premise that “electronic surveillance is anathema except within certain narrowly prescribed boundaries”).
In this case, the Commonwealth cannot demonstrate the necessary link between evidence of criminality and Diaz’s cellular telephone. Probable cause did not exist that the cellular telephone was related to Diaz’s alleged possession or alleged distribution of drugs. Lynn police originally arrested Diaz for a simple motor vehicle violation. Had Officers DiMeglio and Polonia never discovered heroin in the back of Diaz’s truck, a search of Diaz’s cellular telephone incident to his arrest for driving without a license would be unreasonable. See Commonwealth v. Toole, 389 Mass. 159, 164 (1983) (search of the cab of defendant’s truck for a gun after his arrest for assault and battery was not permissible where the police did not have probable cause to believe that the defendant was illegally carrying the weapon). The seizure of drugs from Diaz’s truck supplied Lynn police with another basis to arrest Diaz, thereby expanding the permissible sweep of a search incident to his arrest. See Commonwealth v. Sweeney, 50 Mass.App.Ct. 48, 52-53 (2000) (where defendant was arrested for assault and battery, G.L.c. 276, §1 did not preclude the seizure of cocaine as incident to a lawful arrest because probable cause to arrest and search the defendant for illegal drug possession existed independently of the probable cause to arrest him for assault and battery). Nevertheless, the mere facts of Diaz’s possession of a controlled substance and his receipt of multiple telephone calls in a short duration, did not together create probable cause to believe that Diaz was utilizing his cellular telephone to distribute drugs.
Specifically, the Lynn police lacked any reasonable basis to suspect that Diaz was using his cellular telephone to coordinate drug deals.[2] The officers who arrested Diaz never observed him communicate on his cellular telephone. See Wurie, 612 F.Sup.2d at 106; see also People v. Jackson, 2009 WL 1976047 at *1 (Cal.App. 5th Dist. Jul. 9, 2009) (confidential informant set up drug purchases from defendant using his cellular telephone). While drug traffickers commonly use multiple cellular telephones to facilitate their enterprise, Diaz only possessed one at the time of his arrest. See Ramirez, 2007 WL 1829392, at *2 (police seized eight cellular telephones from defendant’s car). *100 Finally, in these circumstances, four to five incoming calls in the span of twenty minutes was simply too few to justify the inference that Diaz used his cellular telephone like an “office” to conduct a drug trade. See De La Paz, 43 F.Sup.2d at 371 (defendant’s cellular telephone rang at least nine times); Jackson, 2009 WL 1976047 at * 1 (defendant’s cellular telephone received between twenty and thirty calls in an hour); Ramirez, 2007 WL 1829392, at *3 (one cellular telephone was ringing “constantly”). The instant case is more like State v. Isaac, 2009 WL 1858754, at *6 (Kan.App., Jun. 26, 2009), where the fact that the defendant’s cellular telephone rang “several times” following his arrest could not lead the officers to reasonably believe that “this [next] particular phone call would indicate that [the defendant] possessed marijuana with the intent to sell.” Similarly, the Lynn police officers had no principled way of distinguishing between incoming calls to Diaz’s cellular telephone that were likely to be perfectly lawful, and those calls that might produce evidence of criminality. To allow government agents to answer a cellular telephone without a warrant under such circumstances would allow just the sort of “indiscriminate searches . . . conducted under the authority of ‘general warrants’ ” that courts are constitutionally bound to prohibit. Payton v. New York, 445 U.S. 573, 583 (1980).
CONCLUSION
The court finds that Lynn police properly towed Diaz’s truck following his arrest on December 15, 2008. There is no basis to invalidate the attendant inventory search of the vehicle, and the heroin was lawfully seized. The police did not have probable cause, however, to justify a warrantless search of Diaz’s cellular telephone for the purpose of securing evidence of an intent to distribute heroin. Accordingly, the statements made by third parties to the officers who answered Diaz’s cellular telephone, and Diaz’s statements themselves, must be suppressed as fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471, 485-86 (1963).[3]
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant Felipe Diaz’s Motion to Suppress is DENIED as to the evidence seized from his motor vehicle, but ALLOWED as to the evidence seized from his cellular telephone.

In support of the delayed search, the Wurie court cited United States v. Edwards, 415 U.S. 800, 803 (1974), for the proposition that “searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention.” Edwards authorized a warrantless search of a suspect’s clothes at the station house several hours after he was detained. The breadth of the U.S. Supreme Court’s holding in Edwards was subsequently limited by United States v. Chadwick, 433 U.S. 1, 16 n. 10 (1977), overruled on other grounds by California v. Acevedo, 500 U.S. 565 (1991). There, the Court distinguished searches of the person from searches of possessions within an arrestee’s immediate control. Suppressing the fruits of a warrantless search of a locked footlocker performed over an hour after the owner’s arrest, the Court explained:
[o]nce law enforcement officers have reduced luggage or other personal property associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.
Id. at 15. Since Chadwick, courts have treated elements of an individual’s clothing or person, which are subject to delayed searches incident to arrest, differently from possessions within an arrestee’s immediate control, which have Fourth Amendment protections at the stationhouse. See, e.g., United States v. Monclavo-Cruz, 662 F.2d 1285, 1290 (1981); Pierre, 72 Mass.App.Ct at 586.
The Wurie court did not address Chadwick and simply declared that it “[saw] no principled basis for distinguishing a warrantless search of a cell phone from the search of other types of personal containers found on a defendant’s person” that fall in the Edwards category. Wurie, 612 F.Sup.2dat 110. Several other courts have identified bases for distinctions, however, and, citing to Chadwick, they have suppressed warrantless cellular telephone searches allegedly made incident to arrest. See United States v. Park, 2007 WL 1521573, at *9 (N.D.Cal. May 23, 2007) (holding that a cellular telephone “should not be characterized as an element of an individual’s clothing or person” based on “the quantity and quality of information” that a cellular telephone is capable of storing); United States v. Lasalle, 2007 WL 1390820, at *5 (D.Haw. May 9, 2007); see also United States v. Wall, 2008 WL 5381412, at *3-4 (S.D.Fla. Dec. 22, 2008). While the court need not reach this precise issue on Diaz’s motion, the reasoning in these cases is a persuasive departure from the “trend heavily in favor of finding that the search incident to arrest or exigent circumstances exceptions apply to searches of the contents of cell phones,” as noted by the Wurie court.

Without probable cause, the search of Diaz’s cellular telephone cannot be justified based on exigent circumstances, either. Two elements must be satisfied before this exception may apply: (1) there must be probable cause to believe that evidence of a crime is or will be in the particular location; and (2) the circumstances must be so urgent and unforeseeable that obtaining a warrant is impracticable. Commonwealth v. Pietrass, 392 Mass. 892, 897 (1984). The Commonwealth has failed to meet its burden of establishing probable cause to search the cellular telephone for evidence of an intent to distribute. See Commonwealth v. Huffman, 385 Mass. 122, 127 (1982). The court, therefore, does not reach the second element, i.e., the question whether an incoming call to a cellular telephone in an officer’s possession at a police station can create an exigent situation. See Commonwealth v. DeJesus, 439 Mass. 616, 620 (2003) (“A reasonable belief as to the potential loss or destruction of evidence may create exigent circumstances permitting a warrantless search and seizure of evidence”) (citations omitted); Garcia, 34 Mass.App.Ct. at 394-95 (noting that an impracticability finding requires a showing that “the evidence will be destroyed or removed before .. . [the police] can secure a search warrant”) (citations omitted); De La Paz, 43 F.Sup.2d at 376 (impracticable at any time before arraignment for officers to obtain warrant to answer arrestee’s ringing cellular telephone).

Evidence that the defendant’s cellular telephone was ringing does not raise an issue of constitutional dimension and the admissibility of such evidence is reserved for the trial judge.