NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1398

COMMONWEALTH

vs.

EDDIE MCCLOY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a joint, jury-waived trial in the Superior Court with two codefendants, the defendant, Eddie McCloy, was found guilty of possession with intent to distribute cocaine, in violation of G. L. c. 94C, § 32A (c), and possession with intent to distribute heroin, in violation of G. L. c. 94C, § 32 (a). The defendant now appeals, arguing that the trial judge improperly denied his motion for a required finding of not guilty because the Commonwealth failed to present sufficient evidence that the defendant had the ability and intention to exercise dominion and control over the drugs necessary to find him guilty on a theory of constructive possession.  We affirm.

Background.  We summarize the facts in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  On September 9, 2016, at approximately 8:30 A.M., members of the Massachusetts State police executed a search warrant for a three-bedroom apartment in a multifamily home in Fitchburg.  During their search, the police "breached" the first bedroom on the left hand side of the apartment, which was secured by a deadbolt lock (which none of the defendants had a key to on their person).  The police discovered the defendant alone in the bedroom and placed him under arrest.  While the police did not find cash, drugs, or drug paraphernalia on the defendant's person, the police did find, in plain view, drug paraphernalia on top of a bureau located in the room, including digital scales, white residue, a knife with residue, and boxes of small plastic bags.  Inside the bureau drawers, the police found an "off-white block like substance," packaging materials consistent with drug distribution, and United States currency.  The bedroom also contained several surveillance monitors that captured the outside of the residence and the common room of the apartment. Inside the bedroom closet, the police discovered an open safe containing a glass measuring cup with a "whitish-brown" rock-like substance in it, as well as two firearms and ammunition.

2

Three additional firearms were found in the room, two under a pillow and one in a brown satchel at the foot of the bed. The white rock-like substance found within the bureau consisted of 106 grams of cocaine, and the brown rock-like substance found within the safe consisted of 63 grams of heroin. The police also found drug paraphernalia and currency elsewhere in the apartment including a digital scale, plastic baggies, and packaging materials in the kitchen cabinets; needles and corner baggies in the second bedroom; and nearly two thousand dollars in United States currency in a bag located in the third bedroom.

The police also arrested codefendants Jones and Mitchell. Codefendant Jones was discovered in the third bedroom and was carrying over four thousand dollars on his person. Although codefendant Mitchell was not present in the apartment at the time the warrant was executed, the police found Mitchell's fingerprints inside the safe located in the first bedroom closet, as well as paperwork and mail belonging to Mitchell in the first bedroom and throughout the residence.

For approximately three weeks prior to the execution of the search warrant, the police conducted a drug distribution investigation of the apartment. At trial, State police Trooper Ryan Dolan testified that police conducted surveillance of the apartment and saw numerous people, many of whom appeared to be

drug users, entering the apartment and leaving after a short amount of time. Trooper Dolan also testified that he saw the defendant and codefendants exiting the apartment.

Discussion. When reviewing claims of insufficient evidence presented at trial, "we assess the evidence in the light most favorable to the Commonwealth 'to determine whether any rational trier of fact could have found each element of the crime beyond a reasonable doubt.'" Commonwealth v. Baez, 494 Mass. 396, 400 (2024), quoting Commonwealth v. Robinson, 493 Mass. 303, 307 (2024). "The evidence may be direct or circumstantial, and we draw all reasonable inferences in favor of the Commonwealth" (citation omitted). Baez, supra.

To prove possession with the intent to distribute cocaine or heroin, the Commonwealth must establish that the defendant "(1) knowingly possess[ed] the drug and (2) intend[ed] to transfer it physically to another person" (citation omitted). Commonwealth v. Tavernier, 76 Mass. App. Ct. 351, 355 (2010). "[T]o prove constructive possession, the Commonwealth must present evidence that the defendant had both knowledge of the contraband and the ability and intention to exercise dominion and control over it." Commonwealth v. Bienvenu, 63 Mass. App. Ct. 632, 638 (2005), quoting Commonwealth v. Ortega, 441 Mass. 170, 174 (2004). "Although mere presence where drugs are

4

discovered is not enough to support an inference of possession of the drugs, the defendant's presence, coupled with a 'plus' factor, i.e., other incriminating evidence, may suffice" (quotations and citation omitted). Bienvenu, supra.

Here, the defendant argues that the Commonwealth failed to present sufficient evidence that he had the ability and intention to exercise dominion and control over the heroin and cocaine because the evidence established that he was merely present in the apartment and no cash or drugs were found on his person. This argument is unavailing.

The evidence, viewed in the light most favorable to the Commonwealth, revealed ample "plus factors" to support an inference that the defendant had both "knowledge of the contraband and the ability and intention to exercise dominion and control over it" (citation omitted). Bienvenu, 63 Mass. App. Ct. at 638. While the police found drug paraphernalia and surveillance equipment throughout the apartment, the evidence supported that the bedroom where the police found the defendant locked inside was the center of the drug distribution operation within the apartment. At trial, State police Trooper Felipe Martinez, who testified as an expert for the Commonwealth on drug distribution, stated that the quantity of cocaine and heroin found in the bedroom; the surveillance equipment; and the

5

drug paraphernalia, including the digital scales, baggies, and drug packaging materials, were all indicative of drug distribution.

The defendant's knowledge can also be inferred from the drug residue and drug paraphernalia in plain view located on top of the bureau in the room he occupied alone behind a locked door. See Commonwealth v. Montalvo, 76 Mass. App. Ct. 319, 323-324 (2010) (evidence that defendant was in only room where contraband was located and in close proximity to drugs and packaging materials in plain view supported inference that defendant had knowledge of drugs).

That the defendant was the sole occupant of the locked bedroom at 8:30 A.M. is also a "plus factor" indicative of his intention to exercise dominion and control over the drugs. See Commonwealth v. Arias, 29 Mass. App. Ct. 613, 619 (1990) (evidence of intention to exercise dominion and control over premises and its contents where defendant was present at early morning hour in barricaded and sparsely furnished apartment in absence of owner or tenant). See also Commonwealth v. Frongillo, 66 Mass. App. Ct. 677, 683 n.13 (2006), and cases cited therein. But see Commonwealth v. Hamilton, 83 Mass. App. Ct. 406, 411 (2013) (finding mere proximity to contraband insufficient to establish constructive possession).

Additionally, that the police found a large sum of cash on codefendant Jones, or that codefendant Mitchell's fingerprints were discovered inside the safe in the first bedroom and his personal belongings were found throughout the apartment, does not diminish the evidence of the defendant's intention to exercise dominion or control over the drugs. See Commonwealth v. Proia, 92 Mass. App. Ct. 824, 833-834 & n.11 (2018) (possession need not be exclusive).

Furthermore, the defendant's reliance on Commonwealth v. Brown, 34 Mass. App. Ct. 222, 225 (1993), is misplaced. Brown simply reaffirmed the principle that a defendant's presence where drugs are found and awareness of the drugs, without other "plus" factors of incriminating evidence, "do not constitute evidence which warrants an inference of ability and intention to exercise control" of an illicit substance. Id. at 226. Notably, the evidence in Brown was found to be insufficient of constructive possession of drugs where a defendant was found by police standing in the living room of her shared apartment that was used for drug dealing but with no drugs, drug paraphernalia, or cash on her person, in her belongings, or in her bedroom. Id. at 225-226. In contrast, beyond mere presence and awareness, the plus factors here included the fact that the defendant was locked in a small bedroom, to which no defendant

7

had keys, that served as the locus of the drug distribution operation and was found in close proximity to significant quantities of narcotics and drug paraphernalia.

Accordingly, the judge did not err in denying the defendant's motion for a required finding of not guilty.

<u>Judgments affirmed</u>.

By the Court (Desmond, Walsh & Toone, JJ.[1]),

Clerk

Entered:  February 4, 2025.

---

[1] The panelists are listed in order of seniority.